593 A.2d 304

ANNE HALL, PETITIONER–APPELLANT, v. BOARD OF EDUCATION OF THE TOWNSHIP OF JEFFERSON, MORRIS COUNTY, RESPONDENT–RESPONDENT.

Argued March 25, 1991—Decided July 30, 1991.

*Stephen B. Hunter* argued the cause for appellant (*Klausner & Hunter,* attorneys).

*James P. Granello* argued the cause for respondent (*Stephen B. Granello,* attorney; *Randi M. Anzivino,* on the brief).

*Arlene Goldfus Lutz,* Deputy Attorney General, submitted a statement in lieu of brief on behalf of State Board of Education (*Robert J. Del Tufo,* Attorney General of New Jersey; attorney).

PER CURIAM.

In this case, a tenured school employee alleged that her employer, the municipal board of education, wrongfully denied her request to extend her retirement date. Following a long and tortuous journey through the administrative process, the State Board of Education (State Board) found that the local board could deny the employee's request. The Appellate Division, one judge dissenting, affirmed. Plaintiff appeals as of right. *R.* 2:2–1(a)(2).

I

Anne Hall was employed as a tenured school secretary for defendant, the Board of Education of the Township of Jefferson (the Board). By letter dated April 16, 1984 (1984 letter), she notified the Board of her intention to retire, writing to Superintendent of Schools Sheldon Rubin:

This is to advise you that it is my intention to retire at the end of the 1986–87 school year, effective June 30, 1987.

At this time, I would like to request any and all special retirement allowances to which I am now or may become entitled.

On May 14, 1984, at its regularly scheduled meeting, the Board approved Hall's retirement, effective on June 30, 1987.

Hall's reference to "special retirement allowances" stemmed in part from Article XVI, Paragraph E, of the collective negotiations agreement between the Board and the Jefferson Township Education Association. That provision addresses compensation to employees "who reach retirement eligibility status prior to the 26 and 30 year period" and who "indicate to the Board their *intention to retire*" (emphasis added). Annual payments were to be made for each year of notice that the employee provided so that an employee would receive greater "longevity payments" as the number of years of notice (up to a maximum of five) increased. More senior employees were entitled to greater annual "longevity payments" than their less-experienced counterparts. Hall received $1500 pursuant to the contractual provision.

Subsequent to the Board's approval of Hall's "intention to retire," Hall's husband died and one of her children was afflicted with a serious illness. In view of her financial status, Hall wrote to the Board on February 26, 1986, to request a two-year extension of her retirement date to June 30, 1989. On March 21, 1986, Rubin responded that "[a]ny such extension as may be granted [would] be based upon [her] performance during the 1986–87 school year."

In January 1987, Hall's supervisor submitted Hall's performance evaluation. Although the evaluation showed average or above-average marks in eight of nine categories, it indicated a "reluctance to cooperate" and charged that Hall "handles problems, but does so with reluctance and minimal follow through." Hall submitted an angry, three-and-one-half-page response to her evaluation, repudiating the negative comments and criticizing her supervisor.

At a closed Board meeting on March 17, 1987, Assistant Superintendent and Board Secretary Maurice Meloon reported on Hall's performance evaluation. Meloon indicated that he originally thought that it was an overall "good evaluation." He concluded, however, based on Hall's response to it, both in writing and at a meeting set up for the purpose of reviewing her situation, that Hall's work was satisfactory but that her attitude was terrible; consequently, he could not recommend to the Board that her request to withdraw her retirement notice be honored. The following month, at its regularly scheduled meeting, the Board accepted Meloon's recommendation. Meloon subsequently wrote to Hall:

> This is to reaffirm the Board's action taken at the May 14, 1984 Board of Ed. meeting accepting your retirement effective June 30, 1987 as requested in your letter of April 10 [sic: April 16]], 1984.

Despite Hall's protest, the Board remained firm, and the school principal informed Hall that her retirement would be effective on July 1, 1987, and that she should not report to work as of that date.

On June 15, 1987, Hall filed a petition of appeal to the Commissioner of Education contesting the local Board's denial of her extension request. Defendant transferred the appeal to the Office of Administrative Law (OAL) as a contested case. The parties agreed to a stipulation of facts that included a list of seventeen requests by employees to postpone, rescind, or accelerate intended retirement dates that had been granted during the period 1983 to 1987. In none of those cases had the Board imposed any conditions on the modification permitted.

The initial decision of the Administrative Law Judge (ALJ) concluded that Hall's April 1984 "resignation" was legally binding on both parties and that Hall had failed to prove that the Board's refusal to extend her retirement date was arbitrary, capricious, unreasonable, or otherwise an abridgement of her tenure rights. The Commissioner remanded for further factual findings, but after making those findings, the ALJ again found in favor of the Board. The Commissioner reversed and ordered Hall's reinstatement with all benefits and emoluments associated with her position, less mitigation. He also directed Hall either to reimburse the Board for any contractual retirement benefits she had received or to have such benefits deducted from the back pay award. The State Board reversed the Commissioner and accepted the ALJ's recommendation to dismiss Hall's appeal.

The Appellate Division, in an unpublished decision, affirmed the State Board's decision. Judge Dreier dissented, reasoning in part that Hall's letter was merely a statement of intent to retire sufficient to trigger her contractual right to pre-retirement benefits. The Board, the dissent continued, always had permitted revocation or extension for previous intent-to-retire notices. The dissent further noted that if the Board had hired a replacement before Hall submitted her extension request, she would have been estopped from withdrawing the notice.

Before us, Hall seeks compensation for all wages and emoluments that she would have received during the 1987–88 and

1988–89 school years, less actual earnings and other income from that period.

## II

■ Although the present dispute raises questions concerning a violation of Hall's tenure rights, estoppel, and the binding nature of Hall's 1984 letter to the Board, we believe that it must be decided on much narrower grounds. Implicated and enmeshed in all of the issues mentioned above is the legal effect of the Board's practice of permitting changes in scheduled retirement dates of employees who had provided notice of intent to retire.

The extent and consistency of the Board's practice are both substantial and undisputed. From May 1983 through the end of the 1985–86 school year it permitted, without any conditions or qualifications, the acceleration, extension, or rescission of twelve intended retirement dates. Only one of those cases involved any substantial disagreement, and the Board ultimately permitted the requested change. During the 1986–87 school year, the Board allowed five more changes in announced retirement dates. The record does not disclose any conditions being placed on those modifications nor rejections of any such requests, and the Board does not contend there were any. We may infer, then, that Hall was the only employee during those four years subjected to a performance evaluation as a condition of being permitted to continue in her tenured position.

We find nothing in the record to indicate why the Board imposed that special condition on Hall. The condition apparently was not related to the adequacy of the reasons motivating her request, because other changes in the intended retirement dates were due to health or personal reasons. We further observe that changed retirement dates apparently placed little or no administrative burdens on the Board; in fact, one employee was permitted to alter her date of intended retirement three times. The small number of changes similarly suggests little

or no administrative inconvenience. ˙Moreover, the record reveals nothing that would indicate that the Board's decisions to permit changes in intended retirement dates were related to the quality of the employee's performance because no reference to performance, either complimentary or derogatory, appears in any of the minutes granting those modifications. (One employee was permitted to rescind her intended retirement date "for the good of the district" but there is no further elaboration in the record.) Thus, in examining the requests of Hall and other employees, we find no compelling reasons—indeed, we find no reason whatsoever—to explain why the Board treated Hall differently from every other employee who sought to alter an announced retirement date.

It is suggested that the collective negotiations agreement should govern this issue, because it provides expressly for the longevity payments. Presumably, both the union and the Board benefit from the "notice of retirement" provision. The Board receives ample notice to find replacement employees and to encourage experienced long-term employees to remain in the system due to the increased compensation that accompanies longer years of service. The provision also enables the Board to realize economies through the early retirement of older, highly paid employees by providing them with a monetary reward. The agreement, however, is silent on whether the notice of retirement is fixed and binding, subject to modification, or rescindable. Further, it provides no express authority for the imposition of conditions. Specifically, the agreement does not refer to a performance-based standard as the basis for permitting or denying an employee's request to modify a date of intended retirement. In sum, the provision permitting longevity payments requires the tenured employee to provide "notice of intent to retire," but does not address the legal effect of such notice or whether it can be modified. If contract terms are unspecific or vague, extrinsic evidence may be used to shed light on the mutual understanding of the parties. *See, e.g., Michaels v. Brookchester, Inc.*, 26 *N.J.* 379, 388, 140 *A.2d* 199

(1958); *The Journeymen Barbers, Hairdressers and Cosmetologists' Int'l Union of Am. v. Pollino,* 22 *N.J.* 389, 394–95, 126 *A.*2d 194 (1956); *see also Koshliek v. Board of Chosen Freeholders of Passaic County,* 144 *N.J.Super.* 336, 365 *A.*2d 492 (Law Div.1976) (interpreting labor agreement between county freeholders and the Patrolman's Benevolent Association on basis of parties' past performance under that agreement). The past practice of the contracting parties is entitled to "great weight" in determining the meaning of ambiguous or doubtful contractual terms. *Kennedy v. Westinghouse Elec. Corp.,* 16 *N.J.* 280, 294, 108 *A.*2d 409 (1954); *Board of Educ. v. Woodstown–Pilesgrove Regional Educ. Ass'n,* 164 *N.J.Super.* 106, 109–10, 395 *A.*2d 884 (App.Div.1978) (school board violated agreement by failing to adhere to preserved prior practice of having shortened school day on day before Thanksgiving), *aff'd,* 81 *N.J.* 582, 410 *A.*2d 1131 (1980). That practice in the present case clearly indicates that the parties understood that notice of retirement could be rescinded.

Under those circumstances we therefore hold that the Board was not entitled to subject Hall to a performance-based standard and could not deny her request to change her intended retirement date. We emphasize the narrow scope of today's decision. This is not an estoppel case in which the Board relied on the notice of intent to retire, nor is it a situation in which the Board offered any explanation for its decision to alter its past practice and subject an employee to a performance-based standard in determining whether to permit alteration of an intended retirement date. We hold only that where an ambiguous contractual provision and a consistent, longstanding practice of permitting modification of an intended retirement date are involved, the Board cannot impose a new condition without any justification and in conflict with past practice.

## III

There remains for determination the amount of damages resulting from the Board's wrongful refusal to permit Hall to

change her retirement date. Hall requests all lost wages and emoluments of employment during the 1987–88 and 1988–89 school years less actual earnings and other income during that time period. The calculation of damages may not be as simple or straightforward as Hall's request suggests. Arguably, Hall should have to return the longevity payments that she received as a result of providing the notice of intended retirement. If her requested extension had been granted, however, she theoretically would have been entitled to three years of longevity payments (from the date that she requested a change of her retirement benefits to the ultimate date of her retirement). That rate of pay was slightly higher for 1988–89 than under the previous agreement, so that she may have been entitled to greater payments than she actually received. As neither party raises the issue of the calculation of longevity payments, we remand for a determination of damages.

## IV

The judgment of the Appellate Division is reversed, and the matter is remanded to the Commissioner of Education for a determination of damages.

POLLOCK, J., dissenting.

If appellate judges were knights errant, the majority opinion would be more defensible. The judicial role, however, is more restrained. Reviewing courts should defer to the decisions of administrative agencies unless those decisions are arbitrary, capricious, or unreasonable.

Pursuant to the collective negotiations agreement between the Jefferson Township Board of Education (the local board) and the Jefferson Township Education Association, the local board provided additional compensation to employees who gave advance notice of their intention to retire. Petitioner, Anne Hall, a tenured school secretary, availed herself of this benefit by notifying the local board on April 16, 1984, that she intended

to retire on June 30, 1987. The local board approved Hall's retirement and paid her the $1500 "longevity payment" to which she was entitled under the agreement.

Subsequently, Hall's financial status took a turn for the worse, when her husband died and her child fell ill. She requested a two-year extension of her retirement date. Instead of categorically rejecting her request, the local board informed her that any extension would be based on her job performance. After a negative performance evaluation, the local board denied her request. At the conclusion of the administrative process, the State Board of Education (State Board) upheld the denial.

The State Board, consistent with the decision of the administrative law judge, concluded that "petitioner's tendered resignation with an effective date of June 30, 1987 was legally binding on both parties upon acceptance by the board on May 14, 1984, and could not thereafter be unilaterally rescinded or modified." In affirming that conclusion, the Appellate Division recognized the limits of its authority: "Our review function is very limited in these circumstances. A court cannot vacate the State Board's determination in the absence of a showing that the decision is arbitrary or capricious or lacks support in the record."

As the Appellate Division recognized, when reviewing an administrative agency decision, an appellate court should determine only whether the decision is arbitrary or capricious or lacks support in the record. *Henry v. Rahway State Prison,* 81 *N.J.* 571, 579–80, 410 *A.*2d 686 (1980); *Dore v. Board of Educ.,* 185 *N.J.Super.* 447, 453, 449 *A.*2d 547 (App.Div.1982). The reviewing court may not substitute its judgment for that of the agency. *Mead Johnson & Co. v. Borough of S. Plainfield,* 95 *N.J.Super.* 455, 466, 231 *A.*2d 816 (App.Div.1967).

In a decision limited to the facts of this case, *ante* at 306, 593 *A.*2d 307, the majority concludes "that the Board was not entitled to subject Hall to a performance-based standard and could not deny her request to change her intended retirement

date." The flaw in the conclusion is that the majority does not find that the decision was arbitrary, capricious, or unreasonable. In the absence of any such finding, the majority looks to the past practice of the local board in permitting other employees to rescind or modify their retirement notifications. Contrary to the majority's view, however, that practice did not create a contractual term allowing petitioner to rescind at will. Nor, as the majority recognizes, did the local board's past practice estop it from rejecting petitioner's request. Nothing in the record supports the notion that petitioner relied on the local board's practice in submitting her retirement notice. *See Foley Mach. Co. v. Amland Contractors, Inc.*, 209 *N.J.Super.* 70, 75–76, 506 *A.*2d 1263 (App.Div.1986). Furthermore, the effect of the majority opinion may be to require local school boards and teachers' unions to reconsider the advisability of "special retirement allowances," such as was negotiated between the Jefferson Township Board and the Jefferson Township Education Association. By holding that the local board created a new contractual term by permitting other employees to rescind or modify, the majority puts local boards in the untenable position of risking such programs whenever they consider an individual employee's modification request.

Education remains essentially a local matter. Accordingly, the local board could grant or deny a request such as petitioner's. Instead of denying her petition outright, the local board took a more considered approach, basing its decision on petitioner's job performance. This, I submit, was a reasonable decision, well within the local board's prerogatives. The mere fact that the local board may have followed a different practice in other cases is not dispositive. A reasonable practice does not become unreasonable merely because it is new.

The record reflects that petitioner was a difficult employee. Her supervisor's performance evaluation indicated her "reluctance to cooperate." The assistant superintendent confirmed to the local board that petitioner's "attitude is terrible."

Confronted with this evidence, the State Board ruled that it was

discretionary on the part of the [local] board whether to agree to a requested rescission and modification thereof.

To hold otherwise would render meaningless a tendered resignation and a board's acceptance thereof, as the employee would be free to unilaterally rescind prior to the effective date.

The Appellate Division appropriately deferred to the State Board's decision; this Court should do the same. I would affirm the judgment of the Appellate Division upholding the decision of the State Board of Education.

Justices CLIFFORD and O'HERN join in this opinion.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices HANDLER, GARIBALDI and STEIN—4.

*For affirmance*—Justices CLIFFORD, POLLOCK and O'HERN—3.