944 A.2d 58 (2007)
399 N.J. Super. 279
Jayme Sage HEDGES, and Manchester Education Association, Plaintiffs
v.
BOARD OF EDUCATION OF the MANCHESTER REGIONAL HIGH SCHOOL DISTRICT, PASSAIC COUNTY, Defendants.
Superior Court of New Jersey, Law Division, Passaic County.
Decided August 31, 2007.
*59 Jason Sokolowski, for plaintiffs (Zazzali, Fagella, Nowak, Kleinbaum and Friedman attorneys, Newark).
Eric Harrison and Keith Murphy, Edison, for defendants (Methfessel & Werbel attorneys).
RIVA, J.S.C.
Plaintiffs Jayme Sage Hedges and Manchester Education Association ("MEA")[1] sued defendant Board of Education of the Manchester Regional High *60 School District ("Board"). The case involves the Board's denial of plaintiffs request to return to work during the 2005-06 school year after completing maternity leave. Plaintiffs claim that the Board's decision requiring a tenured female teacher, who completes maternity leave during the school year, to remain out of work without pay until the beginning of the next school year violates the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1-49 and breaches the "Maternity/Paternity Leave (Child-Rearing)" provision ("child-rearing provision")[2] in the collective bargaining agreement ("CBA")[3] entered into between the MEA and Board.
The issues posed in this matter arise in the context of summary judgment motions brought by both sides. After reviewing the submissions and arguments of counsel and applying the summary judgment principles articulated in Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995) and R. 4:46-2, the Board's summary judgment motion is granted as to the LAD claim, but denied as to the breach of contract claim. The plaintiffs' cross-motion is denied in its entirety.

I.
Plaintiff is a tenured teacher who has been employed by the Board since September 1, 1999. She is a member of the bargaining unit represented by the MEA, which is the majority representative of all teachers employed by the Board.
On May 3, 2002, plaintiff informed Board Superintendent Dr. Raymond Kwak that she was expecting the birth of her first child. The child was delivered by caesarian section on July 17, 2002, which prompted plaintiffs eight week postpartum medical disability up to and including September 11, 2002. As part of her disability, plaintiff used five accumulated sick days and on September 12, 2002 began eight weeks of family leave allowed under the Federal Family and Medical Leave Act ("FMLA"), 29 U.S.C.A § 2601-54 and New Jersey Family Leave Act ("NJFLA"), N.J.S.A 34:11B-1-16. On September 25, 2002, plaintiff informed Dr. Kwak that she intended to take twelve weeks of family leave under the FMLA and NJFLA. Subsequently, on October 10, 2002, the Board approved an additional four weeks of statutory family leave effective November 4, 2002 through November 29, 2002.
On October 31, 2002, plaintiff requested a one month maternity leave for the care of her child under the child-rearing provision of the CBA,[4] and indicated that thereafter she would return to work on January 2, 2003. On November 14, 2002, the Board approved plaintiffs request, which covered the period from December 2, 2002 through January 1, 2003. After plaintiff completed her maternity leave, she returned to work on January 2, 2003.
Plaintiff became pregnant again in April 2005. Upon learning of her pregnancy, she informed Dr. Kwak that her expected delivery date was around July 25, 2002. She indicated that she would be disabled and using accumulated sick days from September 6 to September 19, 2005 (allowing for eight weeks postpartum/post-operative disability from the date of birth of her *61 child). This time plaintiff requested twenty-four weeks of family leave from September 20 through March 7, 2006 under the FMLA and NJFLA. She, also requested four weeks of unpaid maternity leave under the child-rearing provision of the CBA. Finally, she indicated that she planned on returning to work on April 3, 2006.
On May 9, 2005, Dr. Kwak responded to plaintiff. He stated:
I am in receipt of your request for a leave of absence request, dated April 19, 2005, in connection with the birth of your child. In your letter, you indicated that the expected date of delivery is July 25, 2005. You seek to use your accumulated sick days from September 6, 2005 through September 19, 2005 and request a federal and state family leave of absence from September 20, 2005 through March 7, 2006. At the conclusion, you also seek an unpaid child rearing leave of absence for an additional four (4) weeks with a return to work date of April 3, 2006.
Please be advised that you are not entitled to use your sick days from September 6, 2005 through September 19, 2005 since you are not disabled during that time period. Your period of disability related to an anticipated July 25, 2005 date of delivery would cease prior to September 6, 2005. As a result, you are eligible for an unpaid twelve (12) week leave of absence, with medical benefits, under the Federal Family and Medical Leave Act and the New Jersey Family Leave Act for the care of your newborn child. Since you are not disabled, the need to care for your newborn child will simultaneously qualify you for a leave of absence under federal and state law. The leave will commence on the week of September 5, 2005 and expire on November 25, 2005.
Pursuant to Article VI of the parties' collective negotiations agreement, a child rearing leave of absence requires the return of a teacher at the beginning of the following school year. In other words, a child rearing leave of absence can be granted for the period beginning November 28, 2005 and ending June 30, 2006, but not ending April 12, 2006. You, therefore, have the choice of returning to work on November 28, 2006 when your Federal Family Medical Leave Act and the New Jersey Leave Act leave of absence expires or you can request an unpaid child rearing leave through June 20, 2006.
Kindly advise me whether you desire to request a child rearing leave of absence through June 30, 2006. Otherwise, you will be expected to return to work on November 28, 2005 when your family leave expires.
In late June 2005, plaintiff responded to Dr. Kwak. She informed him that her delivery date had been changed to July 20, 2005 and estimated that her disability would continue for eight weeks until September 14, 2005 because of the abdominal surgery. She requested twenty-four weeks of family leave under the FMLA and NJFLA from September 15 to March 2, 2006 and a one month unpaid maternity leave under the child-rearing provision of the CBA. She again expressed her desire to return to work in the beginning of April 2006.
On July 27, 2005, Dr. Kwak replied to plaintiff. He wrote:
I am in receipt of your revised undated request for a leave of absence. In your letter, you indicated that the expected date of delivery is now July 20, 2005. You seek to use your accumulated sick days from September 6, 2005 through September 14, 2005 and have requested a federal and' state family leave of absence *62 from September 15, 2005 through March 2, 2006. At the conclusion, you have requested an unpaid child rearing leave of absence from March 3, 2006 with a return to work date of April 3, 2006.
To be eligible to use your sick days through September 14, 2005, you have to provide me with medical documentation of your revised date of delivery and the medical basis for the subsequent eight week period of disability. With regard to your request for family leave, you are eligible for an unpaid twelve (12) week leave of absence, not twenty-four (24) weeks, under the Federal Family and Medical Leave Act and the New Jersey Family Leave Act for the care of your newborn child. Since you are not disabled, the need to care for your newborn child will simultaneously qualify you for a leave of absence under federal and state law. The leave will commence on September 14, 2005 and expire on December 6, 2005.
Pursuant to Article VI of the parties' collective negotiations agreement, a child rearing leave of absence requires the return of a teacher at the beginning of the following school year. In other words, a child rearing leave of absence can be granted for the period beginning December 7, 2005 and ending June 30, 2006, but not ending March 31, 2006. You, therefore, have the choice of returning to work on December 7, 2005 when your Federal Medical Leave Act and the New Jersey Leave Act leave of absence expires or you can request an unpaid child rearing leave through June 30, 2006.
Kindly advise me no later than August 17, 2005, whether you desire to request a child rearing leave of absence through June 30, 2006. Otherwise, you will be expected to return to work on December 7, 2005 when your family leave expires. These dates are contingent upon you providing the district with requested medical documentation.
On August 17, 2005, plaintiff informed Dr. Kwak that she chose to use her sick leave at least until September 14, 2005 along with her statutory family leave. She asserted that the child-rearing provision of the CBA does not require tenured teachers on maternity leave to return to work following the school year after the leave and thus she requested a maternity leave until early April 2006.
On August 25, 2005, Dr. Kwak reaffirmed his position that plaintiff must return to work on December 7, 2005 or the following school year, but not at the beginning of April 2006. He indicated that the requirement for a teacher on maternity leave to return to work at the beginning of the school year applies equally to both tenured and non-tenured teachers, the distinction being that tenured teachers may be permitted to take an additional year of leave prior to their return.
On September 6, 2005, Carol Pierce, a New Jersey Education Association Uni-Serv Representative, sent a memorandum on plaintiffs behalf to Dr. Kwak acknowledging that plaintiff elected to remain on maternity leave until June 20, 2006, but that she was doing so without prejudice to her right to return to work in April 2006.
On September 12, 2005, Dr. Kwak sent notified Pierce that plaintiff would be granted a maternity leave until June 30, 2006 at the next Board meeting on September 22, 2005. Subsequently, on September 22, 2005, the Board approved a resolution granting plaintiff family leave under the FMLA and NJFLA from September 14, 2005 through December 6, 2005, and an unpaid maternity leave under the child-rearing provision of the CBA from December 6, 2005 through June 20, *63 2006. The Board denied plaintiffs request to return to work during April 2006. Thereafter, a grievance was filed with the Board, which the Board also denied. Because the agreement does not provide for arbitration, plaintiffs filed this lawsuit.

II.
I address first the LAD claim.[5] The CBA entered into between the Board and MEA covers the period from July 1, 2003 to June 30, 2006. Article VI, Personnel Leave, section A(2)(g)(1)(a) of the CBA provides:
g. (1) Maternity/Paternity Child-Rearing Leave and Maternity Disability

(a) Maternity/Paternity Leave (Child-Rearing) shall be granted to a teacher, without pay, upon application to the Board specifying the dates upon which the teacher wishes the leave to commence and terminate; arid with the provision that a return from such leave shall be at the beginning of the school year next following the granting of leave for a non-tenured staff member, and an additional school year shall be granted upon the request of a teacher who is under tenure. The Board is not required to continue employment of a non-tenured teacher beyond the year in which the leave is taken.
Plaintiffs contend that the child-rearing provision as enforced against her violates the LAD, which protects the "civil right" of "[a]ll persons . . . to have the opportunity to obtain employment." N.J.S.A. 10:5-4. In furtherance of that right, N.J.S.A. 10:5-12 declares, in pertinent part, that it is
an unlawful employment practice, or, as the case may be, an unlawful discrimination:
a. For an employer, because of race, creed, color, national origin, ancestry, age, marital status, domestic partnership status, affectional or sexual orientation, genetic information, sex, . . . to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment. . . .
When interpreting the LAD, our Supreme Court has construed the language of the statute to achieve the Legislature's broad remedial purpose of ending discrimination. See Cedeno v. Montclair State Univ., 163 N.J. 473, 478, 750 A.2d 73 (2000). Indeed, the Court has looked to the "substantive and procedural standards established under federal law" for general guidance in determining whether members of the classes protected by the LAD have been subjected to unlawful discrimination in an employment setting. See Gerety v. Hilton Casino Resort, 184 N.J. 391, 398, 877 A.2d 1233 (2005); see also Lehmann v. Toys `R' Us, Inc., 132 N.J. 587, 601, 626 A.2d 445 (1993) (stating that in construing the terms of the LAD, the Court has frequently looked to federal precedent governing Title VII of the Civil Rights Act of 1964 ("Title VII") as a key source of interpretative authority).
The United States Supreme Court has recognized two theories of relief under Title VII  disparate treatment and disparate impact  which our Supreme Court has acknowledged as cognizable under the LAD. Gerety, supra, 184 N.J. at 398, 877 *64 A.2d 1233 (citing Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 81-82, 389 A.2d 465 (1978)). Claims of "disparate impact" have been described as involving employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. See Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396, 415 n. 15 (1977).
A disparate impact claim does not require the plaintiff to demonstrate proof of the employer's discriminatory motive. Peper, supra, 77 N.J. at 82, 389 A.2d 465. Rather, a plaintiff must show that a facially neutral policy "resulted in a significantly disproportionate or adverse impact on members of the affected class." Gerety, supra, 184 N.J. at 399, 877 A.2d 1233 (quoting United Prop. Owners Ass'n of Belmarv. Borough of Belmar, 343 N.J.Super. 1, 47, 777 A.2d 950 (App.Div.), cert. denied, 170 N.J. 390, 788 A.2d 774 (2001)). "The proof required for a finding of proscribed disparate impact is informed by the requirements set forth in 42 U.S.C.A. § 2000e-2(k)." Gerety, supra, 184 N.J. at 400, 877 A.2d 1233 (citing Esposito v. Edison, 306 N.J.Super. 280, 289-90, 703 A.2d 674 (1997), certif. denied, 156 N.J. 384, 718 A.2d 1212 (1998)). Those requirements are that a complaining party must demonstrate that a respondent's employment practice disparately impacts a protected class, and the respondent must demonstrate that the challenged practice is job related for the position and consistent with business necessity. See 42 U.S.C.A. § 2000e-2(k)(1)(A)(i).
Plaintiffs contend that the Board's maternity leave policy results in a significantly disproportionate and adverse impact on women in two ways. First, only women have taken the leave which is impacted by this policy. Second, the only type of leave for which the teacher must remain out of work for the remainder of the school year is maternity leave.[6]
I am not persuaded by plaintiffs' argument. The child-rearing provision of the CBA is not the result of unilateral decision making or implementation on the part of the Board, but rather the product of negotiation between the Board and the MEA, plaintiffs designated bargaining representative. If the CBA required new parents both (a) to take maternity leave, and (b) to take such leave through the end of a school year, then a valid disparate impact claim would exist. That is not the situation here. Instead, the CBA guarantees a teacher the option of an extended leave for child-rearing beyond the last leave to which such teacher is otherwise entitled.
Likewise unavailing is plaintiffs' argument that the maternity leave policy adversely impacts the protected class of women. The child-rearing provision is gender neutral. Even though only women have elected to utilize the leave, plaintiffs have failed to demonstrate the key element of a disparate impact claim-the adverse impact on a protected class. Here, by granting leave in excess of that which is required by law; the child-rearing provision has created a substantial benefit to teachers of either gender who seek additional child-rearing leave. Moreover, the provision is contractually guaranteed and exercisable at the teacher's sole discretion. If a teacher, regardless of gender, does not require additional child-rearing leave, the *65 teacher can simply choose not to take such leave.
Plaintiffs correctly point out that the New Jersey Supreme Court has held that' a mandatory maternity leave policy violates the LAD. Here, in contrast, the child-rearing provision is a contractual option that can be invoked at the sole discretion of an employee seeking such leave. Beyond that, there is simply no evidence that plaintiff was required or even encouraged to invoke the benefit of the child-rearing leave provision.
This matter differs from Castellano v. Linden Board of Education, 79 N.J. 407, 400 A.2d 1182 (1979), cited as authority by plaintiffs. In Castellano, the Court held that a mandatory one-year maternity leave policy, even when established through a collective bargaining agreement, constituted sex discrimination in violation of the LAD. The maternity leave foisted upon Castellano by her employer was a discriminatory contractual mandate that required the continued absence without pay of new mothers who were ready, willing, and able to return to work. By contrast here, the gender neutral child-rearing provision is a contractual option to begin upon the exhaustion of plaintiffs disability and statutory leaves. That distinction is an important one.
Fortunately for plaintiff, the MEA bargained for an optional additional leave which would entitle her to spend more time with her child. Because plaintiff chose to take additional time off to care for her newborn child, she invoked her contractual entitlement to additional unpaid maternity leave  a benefit to which all employees, including men, are entitled.
I accept the Board's argument that its child-rearing policy is not unlike the medical leave policy present in Gerety, supra, 184 N.J. at 402, 877 A.2d 1233. In Gerety, the plaintiff alleged a violation of her rights under the LAD based upon her employer's refusal to allow her to extend her medical leave beyond twenty-six weeks because of complications related to a difficult pregnancy. The contract provided that "family and medical leave during a twelve consecutive month period cannot exceed twenty-six weeks; and if an employee takes more than twenty-six weeks of leave, that employee is terminated from employment but is eligible for retire." Id. at 394, 877 A.2d 1233. The Court held that "because defendant's leave policy was applied non-discriminatorily and not subject to exception, application of that policy to [the plaintiff] does not create a violation of the LAD." Ibid.
Regarding pregnant women, the Gerety Court observed:
It goes without saying that only women can become pregnant. And, in their employment actions employers may not discriminate against a female employee because she becomes pregnant. That does not mean, however, that an employer discriminates simply by adopting and adhering to a leave policy that evenhandedly provides male and female employees alike with lengthy periods of medical leave that nonetheless may not cover completely the entire period of time that an employee's health needs may require. Although only women experience pregnancy related medical complications that necessitate long periods of medical leave, there are medical conditions that can strike only men and can create, similarly, the need for extended medical leave.
[Id. at 403-04, 877 A.2d 1233 (internal citations omitted).]
Here too, the Board's policy is likewise even-handed. The child-rearing provision applies with equal force to both men and women who elect to invoke it. Even *66 though requests for maternity leave may outnumber requests for paternity leave, this provision is not mandatory. Rather, it can be invoked by teachers of either gender at their option and provides a benefit above and beyond federal and state leave requirements.
Under all of the circumstances, I reject plaintiffs' claim that the child-rearing provision of the CBA violates the LAD. Accordingly, I conclude that summary judgment on the LAD claim is appropriate.

III.
I next turn to plaintiffs' breach of contract claim.[7] The child-rearing provision of the CBA provides that when a nontenured teacher takes a maternity leave, the teacher must return to work at the beginning of the school year next following the granting of such leave. The parties have different interpretations of this provision.
The Board interprets this provision to require even a tenured teacher to remain out of work for the duration of the school year in which the leave is invoked. The Board maintains that the sole distinction between tenured and non-tenured teachers under this provision is that a non-tenured teacher must return to work at the beginning of the subsequent school year, but a tenured teacher has an option to remain on maternity leave for an additional school year.
Plaintiffs contend that the plain language of the child-rearing provision fails to support the Board's interpretation. Plaintiffs do not dispute that this provision provides for tenured teachers, if they so choose, to remain on maternity leave for an entire school year after the year in which they take maternity leave, but assert that this provision does not specifically compel tenured teachers to remain out of work for the remainder of the school year in which they take maternity leave. Simply put, plaintiffs maintain that tenured teachers who request maternity leave, but terminate that leave during the school year, must be permitted under the CBA to return to work at the termination of the maternity leave, and not the following school year.
An issue regarding interpretation of a contract clause "presents a purely legal question that is suitable for decision on a motion for summary judgment." Spaulding Composites v. Aetna Cos., 176 N.J. 25, 819 A.2d 410 (2003); Driscoll Const. Co., Inc. v. State, 371 N.J.Super. 304, 313-314, 853 A.2d 270 (App.Div.2004); Hebela v. Healthcare Ins. Co., 370 N.J.Super. 260, 268, 851 A.2d 75 (App.Div.2004). Nevertheless, the interpretation of an agreement may present a factual issue if the meaning is uncertain or ambiguous enough to warrant consideration of parol evidence. See Great Atl. & Pac. Tea v. Checchio, 335 N.J.Super. 495, 502, 762 A.2d 1057 (App.Div.2000). See also Groen, Laveson, Goldberg v. Rancher, 362 N.J.Super. 350, 359, 827 A.2d 1163 (App.Div.), certif. denied, 178 N.J. 35, 834 A.2d 407 (2003).
Guided by these principles, I am not persuaded that the child-rearing provision is clear and unambiguous. Indeed, the different interpretations of this provision by the parties suggest otherwise. In determining the meaning of ambiguous or doubtful contractual terms, "great weight" is given to the past practice of the contracting parties. See Hall v. Bd. of Ed. of the Tp. of Jefferson, County of Morris, 125 N.J. 299, 306, 593 A.2d 304 (1991). In Hall, the Court addressed the issue of past *67 practice as relating to a collective bargaining agreement. The plaintiff in Hall was "a tenured school employee [who] alleged that her employer, the municipal board of education, wrongfully denied her request to extend her retirement date." Id. at 301, 593 A.2d 304. In determining whether the Board was entitled to subject Hall to a performance-based standard and to deny her request to change her retirement date, the Court considered the Board's past practice. On that subject, the Court stated:
The extent and consistency of the Board's practice are both substantial and undisputed. From May 1983 through the end of the 1985-86 school year it permitted, without any conditions or qualifications, the acceleration, extension, or rescission of twelve intended retirement dates. Only one of those cases involved any substantial disagreement, and the Board ultimately permitted the requested change. During the 1986-87 school year, the Board allowed five or more changes in announced retirement dates. The record does not disclose any conditions being placed on those modifications nor rejections of any such requests, and the Board does not contend there were any. We may infer, then, that Hall was the only employee during those four years subjected to a performance evaluation as a condition of being permitted to continue in her tenured position.
[Id. at 304, 593 A.2d 304.]
In concluding that the Board wrongfully denied plaintiffs request to extend her retirement date, the Hall Court held that "where an ambiguous contractual provision and a consistent, longstanding practice of permitting modification of an intended retirement date are involved, the Board cannot impose a new condition without any justification and in conflict with past practice." Id. at 306, 593 A.2d 304.
Here, plaintiffs assert that extrinsic evidence in the form of testimony regarding the Board's past practice will show that the Board has permitted tenured teachers taking maternity leave to return to work after termination of the maternity leave during the same school year as the provided leave, and not at the beginning of the next school year. Indeed, the motion record, viewed in the light most favorable to plaintiffs, establishes that after plaintiff gave birth to her first child in 2002, she requested and received approval for eight weeks of family leave covering the period of September 9, 2002 through November 1, 2002. She later was granted an additional four weeks of family leave from November 4, 2002 through November 29, 2002. Thereafter, the Board granted plaintiff a one month maternity leave for the care of her first child from December 2, 2002 through January 1, 2003. Plaintiff then returned to work during the 2002-03 school year.
Another example cited by plaintiffs is Sue Olsen, a co-president of the MEA, who requested and was entitled to take maternity leave, and returned to work in April 1995 after expiration of her leave in the same year that she requested the leave. The CBA in effect at the time of the maternity leave contained the same provision for maternity leave that existed during the 2002-03 and 2005-06 school years. Once again, the Board did not require a tenured teacher to remain out of work for the remainder of the school year in the same year she requested and was provided with contractual maternity leave.
Considered in this light, there exists a genuine issue of material fact as to whether the Board breached the child-rearing provision of the CBA by requiring plaintiff to remain on an unpaid maternity leave until the beginning of the 2006-07 *68 school year "without any justification and in conflict with past practice." Ibid. That said, interpretation of the child-rearing provision also "depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence." See Restatement (Second) of Contracts § 212(2) (1981). Accordingly, I conclude that summary judgment on the breach of contract claim is inappropriate as to both the Board's motion and plaintiffs' cross-motion.
For the reasons given, the Board's summary judgment motion is granted as to the LAD claim, but denied as to the breach of contract claim. The plaintiffs' cross-motion is denied in its entirety.
NOTES
[1] When used in the singular, "plaintiff" refers to Jayme Sage Hedges.
[2] In this opinion, the terms "maternity leave" and "child-rearing leave" are used interchangeably.
[3] This agreement is also referred to as the collective negotiations agreement.
[4] In his certification, Dr. Kwak refutes plaintiff's assertion that she sought a maternity leave. According to Dr. Kwak, plaintiff requested an emergency leave under Article VI(A)(2)(h) of the CBA. This distinction, however, is immaterial to my decision.
[5] The LAD claim is alleged in counts one and two of the amended complaint.
[6] This point does not relate to gender discrimination. Indeed, pregnancy alone does not place plaintiff in a protected class under LAD.
[7] The breach of contract claim is alleged in count three of the amended complaint.