**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2487-17T1

TOWNSHIP OF TOMS RIVER,

      Plaintiff-Respondent,

v.

GUTTMAN FAMILY, LLC,

      Defendant-Respondent,

and

1940 ROUTE 9, LLC,

      Defendant-Appellant.

_____

Argued telephonically January 29, 2019 –
Decided February 14, 2019

Before Judges Sabatino and Haas.

On appeal from Superior Court of New Jersey, Law
Division, Ocean County, Docket No. L-0386-17.

Paul V. Fernicola argued the cause for appellant (Paul
V. Fernicola & Associates, LLC, attorneys; Paul V.
Fernicola, on the briefs).

Richard P. De Angelis, Jr., argued the cause for respondent Guttman Family, LLC (McKirdy, Riskin, Olson & DellaPelle, PC, attorneys; Richard P. De Angelis, Jr., on the brief).

PER CURIAM

This appeal arises out of a dispute over whether a party with a not-fully-implemented contract to purchase real estate has a right to participate in eminent domain proceedings and share in the proceeds of a condemnation award for that property. The trial court concluded the contract purchaser had no such right, finding that it failed to act with diligence and in good faith in pursuing the land use approvals for the property specified in the contract.

The contract purchaser now appeals that determination. For the reasons that follow, we vacate the court's decision and remand for its reconsideration with respect to what appear to be several important aspects of the case.

I.

The pertinent facts include the following. Defendants, Guttman Family, LLC ("Guttman") and 1940 Route 9, LLC ("1940") entered into a contract for the sale of the subject property on December 22, 2015. The property is located at 1940 Lakewood Road in the Township of Toms River and is designated as Block 171, Lots 11, 17, 18, 19, and 32 on the Township's tax map. The agreed-upon purchase price was $5.2 million.

Key Terms of the Sales Contract

Article 1.02(B) of the sales contract required 1940 to deposit $100,000 in escrow upon execution of the agreement and an additional $100,000 upon the expiration of the due diligence period. Both of these sums would be credited towards the purchase price at closing and were potentially refundable.

The contract also stated in Article 3.02(C), "Purchasers require [preliminary subdivision] approvals of 100 +/- residential units." It further provided in Section 3.01 that "[t]he obligation of the Purchaser[1] to purchase the Property is expressly contingent upon the Purchaser successfully obtaining such preliminary subdivision approval[.]"

Due Diligence

Article 1.04 detailed the terms of governing the due diligence process, as follows:

> Purchaser shall have one hundred twenty (120) days to perform its due diligence examination of the Site, title, etc. The due diligence shall be of the extent and nature as the purchaser may require in its sole discretion. If the examination proves unsatisfactory for any reason, other than any reason relating to the state of title regarding Lot 11, Block 171, Purchaser shall have the right to terminate the agreement and have the Deposit monies refunded in full. If the examination

---

[1] The contract vacillates between referring to "Purchaser" in the singular and the plural.

A-2487-17T1

> proves satisfactory, the Purchaser must <u>Notify the Seller in writing within five (5) days of the end of the completion of the due diligence period and to continue with the purchase</u> of the property. At the time the additional deposit of $100,000.00 will be delivered to the Purchaser's attorney.

[(Emphasis added).]

<u>Land Use Approvals</u>

Article 3 of the contract specified the timeline for 1940 to obtain land use approvals for its subdivision plans for the property. The contract afforded 1940 twenty-four months following the due diligence period to obtain these approvals, dividing that period into two separate twelve-month intervals. If 1940 obtained the approvals within the initial twelve months, it was to make a non-refundable deposit of an additional $60,000, which was creditable to the purchase price, to Guttman's attorney. Alternatively, if 1940 did not obtain the approvals within the first twelve months, the contract provided in Article 3.02(B):

> If the Purchaser has acted in good faith to obtain the approvals and same have not been issued within the initial 12 month period, [the] Purchaser shall be entitled to 2) [sic] six month extensions provided Purchaser will [sic] $50,000.00 for each extension up to twelve (12) months, such payments will be non-refundable and not credited towards the purchase price.

A-2487-17T1

Article 3.02(E) specified that, after receipt of the preliminary subdivision approvals, 1940 had forty-five days to close on the sale. The contract in Article 3.07 required both parties "to cooperate in good faith and to act in a prudent and reasonable manner with respect to the processing and submission [sic] all applications and the pursuance of preliminary subdivision approval."

Article 5.02 expressed the conditions precedent to the closing of title, which "must be satisfied or waived in writing before closing can occur." Those conditions precedent included: "[s]atisfaction of the conditions and requirements for closing as stated herein including obtaining Preliminary Subdivision or Site Plan Approval"; and that "[a]ll representations and warranties made by Seller shall be true and correct."

<u>Waiver Rights of the Purchaser</u>

Notably for this litigation, Article 5.02 of the contract, entitled "Satisfaction of Contingencies – Protection of the Purchaser" declared that "[t]he <u>conditions stated</u> are included in this Agreement <u>for the protection of the Purchaser, and Purchaser shall have the right to waive</u> any or all of the contingencies." (Emphasis added). Despite this one-sided waiver provision in Article 5.02, Article 20.09 of the contract states "[e]ither party shall have the

right to waive any conditions contained herein, which are solely for their benefit."  (Emphasis added).

If there is a non-satisfaction or non-waiver of any of the conditions precedent, the "Purchaser shall have the right upon (10) days written notice to Seller, to cancel this Agreement, unless within said ten (10) day notice period all such conditions have been either satisfied or waived."  (Emphasis added).

### Closing and Waiver Rights

In addition, the contract specified in Article 7.02 that closing of title was to "take place within 90 days after all the conditions set forth in this Agreement have been satisfied or waived by the Purchaser."  (Emphasis added).  If the conditions precedent were not satisfied within the specified time frames, Article 7.03 provided 1940 with two options: first, "waiving the conditions precedent and closing title without any reduction or abatement in Purchase Price"; or second, "declaring this Agreement Null and Void and terminating this Agreement and promptly receiving a refund of $200,000.00" of 1940's deposit.

### The Default Provision in Articles 9.01 and 9.02

The contract further specified in Article 9.01 and 9.02 what was to occur in the event either party defaulted.  If the 1940 defaulted, Article 9.01 provided "Seller shall have its full rights and remedies in law and/or equity which shall

A-2487-17T1

not be less than the amount of the deposits."  Reciprocally, if Guttman defaulted, Article 9.02 stated "Purchaser shall have its full rights and remedies in law and/or equity."

Article 16.01 and Notice of Termination

A separate provision of the contract, Article 16.01, specified Guttman's right to terminate the agreement and 1940's companion right to proceed nevertheless with the purchase within five days of receiving such a notice of termination from Guttman.  That provision stated as follows:

> 16.01    Notwithstanding anything herein provided, if Seller undertakes to terminate this Agreement pursuant to the provisions hereof, Purchaser shall have the right to proceed with the purchase of the Property without reduction in the purchase price and upon waiving all contingencies.  Purchaser shall notify Seller in writing, within five (5) business days of receipt of Seller's notice of termination, of its intention to proceed hereunder.

The Parties Post-Contract Actions and Communications

Upon executing the agreement, 1940 deposited the required $100,000 with its transactional attorney.[2]  Thereafter, in a letter dated April 11, 2016, 1940 requested a sixty-day extension in the due diligence period because meetings

---

[2]  Both 1940 and Guttman have been represented in the litigation and on appeal by counsel different from their respective transactional lawyers.

with the Township Planner suggested that more time was needed to formulate an adequate plan for the development of the property. Guttman offered to grant 1940 a thirty-day extension, with an additional thirty-days if 1940 showed it had made satisfactory progress.

1940's counsel responded in a letter dated April 21, 2016 that he believed a ninety-day extension was required but would "certainly accept" a thirty-day extension with a thirty-day renewal of extension. In this letter, 1940's counsel elaborated upon the following efforts that 1940 had already made, stating, "[t]hus far, our client has expended over thirty thousand ($30,000.00) dollars in legal and engineering fees in moving forward with the project. Draft plans were prepared showing a layout of not only the commercial portion of the site but the multi-family portion as well."[3]

The April 21, 2016 letter also refers to a meeting that 1940 representatives had with the Township's Planner to review the proposal, noting that it appeared only eighty units would be approved not the originally contemplated 117 units. The letter also notes "the <u>threatened condemnation</u> by the Township is causing

---

[3] The record on appeal contains this concept plan, dated February 4, 2016, along with a boundary and topographical survey dated February 8, 2016.

A-2487-17T1

some delays[.]" (Emphasis added). Ultimately, the due diligence period was extended by thirty days.

The April 26, 2016 Ordinance Authorizing Condemnation

On April 26, 2016, the Township Council adopted Ordinance 4508-16 authorizing the Township's acquisition by eminent domain of the subject property and other properties on the same block.

The Parties' May 2016 Post-Ordinance Communications

On May 2, 2016, 1940's transactional attorney sent a letter to Guttman's transactional attorney about the pending condemnation action, stating:

> We are moving ahead through the due diligence period as promised. Our clients have obviously expended significant resources thus far.
>
> At this juncture however, we think it would be helpful for all of the parties if the contract were to be amended in order to deal with the condemnation action which will be filed by the Toms River Township. Initially the Township advised your client that they were merely "interested in purchasing the property." The reality is that they are ready to proceed with condemnation.
>
> Our clients' contract is of significant value in negotiating with the Township as to [the] amount to [be] paid to the property owner. Obviously, it has no value unless we complete due diligence and are willing to proceed with the approvals. <u>Needless to say obtaining the approvals is merely a posturing gesture at this time</u>.

9

Our client is willing to move forward providing there is a financial incentive for them to do so. We believe that our client should have an opportunity to share in the increase gained by the use of the contract in negotiating with the Township. We would request that you review this option with your client and advise us as to whether or not there is interest in proceeding.

From our perspective, we would like to control the [condemnation] negotiations with the Township since if we waive due diligence we would have every right to do so. However, there is no incentive for us to push the Township to a Five Million ($5,000,000.00) Dollar purchase price or even a Seven Million ($7,000,000.00) Dollar purchase price unless our client shares in the benefit. We have a baseline number if one is to consider the current fair market value. It is obviously assessed at a very low number and fair market is something greater than the assessed value. If we can agree on the base line number then we can come to some understanding as to how the additional monies would be divided or shared between the parties.

[(Emphasis added).]

Guttman's attorney responded to this letter on May 17, 2016, with a letter stating that Guttman "declines to engage in any amendments" to the contract and asserting "the due diligence period has now expired." The letter requested 1940's attorney to "please advise if your client will be proceeding in good faith to obtain governmental approvals. In the alternative, the contract should be terminated immediately." (Emphasis added). The letter also stated, "[s]hould

10

your client wish to make a substantive offer containing specific terms, please let me know."

1940's attorney responded that same day in a terse email that simply stated: "Our clients have satisfied their due diligence and will proceed with the contract." That same day, 1940 deposited the additional $100,000 required to be paid at the end of the due diligence period.

On May 27, 2016, 1940's attorney sent a letter to Guttman's attorney confirming the escrow deposit had been made. Among other things, the letter states, "As we proceed with the approval process we will provide you with updated information. If your client wishes to meet to discuss the issue of a possible condemnation by the Municipality please do not hesitate to contact us." (Emphasis added).

Pre-Complaint Events in the Latter Part of 2016

On or about June 11, 2016, the Township made an offer to purchase the subject property from Guttman.

On August 2, 2016, 1940's litigation counsel sent a letter to the Township, notifying the Township of its asserted interest, as a contract purchaser, in the subject property. Thereafter, 1940, in a letter dated August 26, 2016, rejected the Township's offer to purchase the property for $4.7 million. 1940 notified

the Township that if it reached an agreement with Guttman to buy the property, the Township would "acquire title subject to [1940's] contract of sale."

As emails and letters in the record reflect, 1940's attorney repeatedly contacted the Township from September 20, 2016 to at least January 20, 2017, inquiring about the anticipated timeline for the filing of the condemnation action.

The February 2017 Condemnation Complaint and the June 2017 Declaration of Taking

On February 8, 2017, the Township filed a condemnation complaint in the Law Division, seeking the appointment of commissioners to value the property. The complaint stated that the Township had offered $4.75 million for the property, corresponding to an appraisal conducted on the Township's behalf in May 2016.

On February 23, 2017, the trial court issued an order requiring, among other things, the Township to deposit its $4.75 million offer into court, and granting the Township, pursuant to N.J.S.A. 20:3-19, "immediate and exclusive possession of the premises" without further process once the declaration of taking, deposit, and proof of service were filed and the required notice given.

On June 28, 2017, the Township filed a Declaration of Taking, confirming that the sum of $4.75 million had been deposited with the court. The Township

also filed a Notice of Lis Pendens that same day, listing defendants Guttman and 1940 as the known condemnees. The Township also issued notices to the tenants on the subject property, notifying them to vacate the premises.

Motion Practice

On August 16, 2017, Guttman moved to withdraw the deposited money and dismiss 1940 from the condemnation proceedings. 1940 cross-moved for, among other things, a declaratory judgment determining that 1940, not Guttman, is entitled to any excess condemnation funds over the $5.2 million contract purchase price, and a declaration that 1940 had not breached its contract with Guttman. Guttman opposed the cross-motion, asserting that 1940 had no valid interest in the parcel because it had not fulfilled the conditions of the sale contract.

The Trial Court's Rulings

After considering the written submissions and the oral arguments of counsel, but without taking any testimony from witnesses, the trial court ruled on October 23, 2017 in favor of Guttman.

Among other things, the court found in its written opinion that the Township had not filed the Declaration of Taking until after what the court found to be the (implicitly non-waived) twelve-month deadline for 1940 to obtain

subdivision approvals; that it is "undisputed" that 1940 did not take any steps after the completion of due diligence to obtain subdivision approval; and that 1940's equitable interest was "terminated by [its] failure to proceed in good faith to complete the contract by taking steps to obtain preliminary subdivision approval."

1940 moved for reconsideration. The trial court denied the motion in a more detailed written opinion dated January 8, 2018.

This appeal by 1940 ensued.[4] Meanwhile, the condemnation action has been stayed.

## II.

Upon due consideration of the issues posed on appeal, we find it appropriate to vacate the trial court's determination and remand the matter for further consideration. In particular, the following three subjects should be explored on remand, along with any associated matters the trial court may wish to reexamine in its discretion.

---

[4] The Township takes no position regarding the merits of the appeal, or concerning 1940's alleged right to share in any condemnation proceeds.

1.

On appeal, 1940 has stressed that Guttman at no time served upon it a notice of termination of the contract, in accordance with the procedures for termination prescribed by Article 16.01 of the contract. If such a notice had been duly served, 1940 would have had under Article 16.01 "the right to proceed with the purchase of the Property without reduction in the purchase price and upon waiving all contingencies." 1940 contends that it would have exercised that right to proceed with the transaction within five days after receiving such a notice.

Guttman acknowledges that, under the timelines of the contract, it could not have served a termination notice under Article 16.01 until, at the earliest, May 17, 2017, i.e., twelve months from May 17, 2016 when the parties agree the due diligence period ended.[5] Guttman maintains the contract automatically expired on or before that May 17, 2017 date, because 1940 had not yet obtained the land use approvals called for under the contract or requested an extension.

We note the trial court's two written opinions did not fully address the potential impact of Article 16.01 upon the analysis of the parties' respective

---

[5] The trial court's first opinion uses the date of May 16, 2017. In light of our remand, the one-day difference may be inconsequential.

rights. Respectfully, that provision could have a critical impact upon the analysis, in light of its prefatory phrase "Notwithstanding anything herein provided[.]" The phrase arguably is meant to be an override of the other provisions and rights set forth within the contract.

We cannot tell from the bare words of Article 16.01 whether the provision implicitly required Guttman to notify 1940 through a formal writing that Guttman considered the contract terminated because of perceived non-performance by 1940, or whether serving such notice of termination was optional under the circumstances presented. The trial court's opinion appears to suggest that service of a formal termination provision was unnecessary in the context of the communications between counsel. However, in the absence of service of formal notice, it is unclear whether and when 1940's rights under the "five-day" aspect of Article 16.02 occurred.

We also cannot tell from the face of the contract how the termination provision in Article 16.01 relates to and affects the governmental approval provisions in Article 3, or the conditions precedent, due diligence, and the contingency provisions in Article 5, or the satisfaction of conditions provision in Article 6, or the closing date provisions in Article 7, or the default provisions in Article 9, or the mutual rights of waiver set forth in Article 20.09. The

16

interplay of these various provisions with Article 16.01 does not appear clear from the face of the contract, and we respectfully invite the trial court to attempt to sort this out in the first instance.

2.

A second area of necessary deeper inquiry relates to the intended meaning of the one-sentence May 17, 2016 email from 1940's counsel to Guttman's counsel stating, "[o]ur clients have satisfied their due diligence and will proceed with the contract."

The first portion of that email sentence ("[o]ur clients have satisfied their due diligence") could be viewed as 1940's representation that it had actually completed all the steps necessary for due diligence to its own satisfaction. Alternatively, the statement could be viewed as 1940's waiver of its right to conduct any further due diligence, even if the due diligence was incomplete. It is also unclear if this waiver extended to other contingencies beyond the due diligence period.

Turning to the second portion of the May 17 email's sentence ("will proceed with the contract"), it is unclear whether that passage was implicitly intended to convey that 1940 was committing unequivocally to buy the property and to pay Guttman the purchase price, regardless of the other contingencies set

 A-2487-17T1

forth in the contract and the looming anticipated condemnation. In other words, was 1940's declaration on May 17, 2016 that it "will proceed with the contract" a waiver by 1940 of any further contingencies and conditions?

We note in this regard the contract's language in Article 5.02 specifying that the conditions stated in the agreement are included expressly "for the protection of the Purchaser [i.e., 1940] and Purchaser shall have the right to waive any or all of the contingencies." (Emphasis added). Can that unilateral provision be sensibly construed to give 1940 an open-ended right to proceed unless Guttman served formal notice to terminate upon 1940? This issue warrants further illumination.

In sum, the documentary record is unclear about the intended meaning of 1940's May 17, 2016 email, and its impact on the parties' respective rights. We respectfully request this subject be explored more deeply on remand.

3.

A third major concern bears upon assessing whether 1940 failed to pursue the development project and the necessary land use approvals in good faith and in a timely manner. In particular, we are uncertain whether the trial court's finding of dilatory conduct and lack of good faith on the part of 1940 is logically

affected by the chronology of the Township's actions in announcing and moving forward with its plans to acquire the property.

As noted, the record tells us that on April 26, 2016, the Township adopted an ordinance authorizing the taking of the property through eminent domain. Nine months later, in February 2017, the Township ultimately filed its condemnation complaint. Thereafter, in June 2017, the Township filed the declaration of taking and deposited the funds.

We question whether it would have been economically sensible and reasonable for 1940 to have continued to spend resources on a development application for the Township's Planning Board after the April 26, 2016 ordinance by the Township's governing body was issued announcing the municipality's authorization to proceed with a taking. The law generally disfavors courses of action and outcomes that entail unreasonable economic waste. See 525 Mainstreet Corp. v. Eagle Roofing Co., Inc., 34 N.J. 251, 255 (1961); see also Twp. of W. Windsor v. Niremburg, 150 N.J. 111, 135 (1997) (observing that a developer cannot be faulted for failing to pursue a development application where it would have been "futile" to do so).

We have substantial doubts that the Planning Board would have proceeded to entertain a development application after the Township's April 26, 2016

condemnation ordinance. To be sure, not all authorized municipal takings result in the filing of a condemnation complaint and an ultimate acquisition. Even so, the actual practicalities and reasonableness of 1940 pursuing development approvals after April 26, 2016 are concerns that warrant closer examination.

Moreover, the record is unclear as to what the original expectations of the parties were concerning the prospects of condemnation at the time when they entered into the sales contract in December 2015. Unfortunately, the parties failed to include any provision within their contract to deal with the prospect of a condemnation action. Their failure to do so has produced this litigation, and the uncertainties we now face in adjudicating the parties' rights. We suspect that a fuller record about the parties' original intent might illuminate this subject as well.

All of these identified concerns must be explored more deeply on remand in an evidentiary hearing that we hope will shed light on these subjects. Such an evidentiary hearing could assist in developing a more informative record about: the intended meaning of the contractual provisions; the impact of Article 16.01 and Guttman's failure to serve any notice of termination in accordance with Article 16.01; the intended meaning and legal impact of the May 17, 2016 email from 1940's counsel, the impact of the April 26, 2016 Township

condemnation ordinance upon the parties' respective rights and obligations; and a realistic evaluation of 1940's efforts (or non-efforts) in pursuing development approvals after that date.

Although we are mindful of the litigation expenses the parties have incurred to date, we are persuaded that a plenary hearing could assist the court in divining the true "intent of the parties" where, as here, the contract terms and the parties' post-contract communications appear to be fraught with multiple ambiguities. See Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 269 (2006) (allowing extrinsic proofs to bear upon an interpretation of the written words of the contracting parties); Hall v. Bd. of Educ., 125 N.J. 299, 305 (1991) (same).[6] The trial court shall have discretion to permit discovery in advance of the evidential hearing.

---

[6] It is conceivable that, once the Township's condemnation plans were formally announced in April 2016, both parties strategically adopted, in essence, a "wait-and-see" non-committal approach. For instance, perhaps Guttman chose not to terminate the contract formally because it wanted to be able to salvage the sale and obtain the contract price from 1940 if the Township were to abandon its announced plans to condemn and acquire the parcel. On the other hand, perhaps 1940 strategically minimized its expenditures on experts, lawyers, and in preparing development applications, waiting to see whether the Township would actually go forward with the condemnation. We do not adopt here such an interpretation of the events, but simply present it for the trial court's consideration as a possibility.

For these reasons, we vacate the trial court's decision and remand for a plenary hearing and other necessary proceedings. In doing so, we do not intimate an appropriate outcome or range of outcomes. Rather, we entrust the matter to the sound reconsideration of the trial court, based upon a fuller and what we hope will be more informative record.

Vacated and remanded for further proceedings.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22

A-2487-17T1