703 A.2d 674

JOSEPH S. ESPOSITO, ALLEN HERMAN, DAVID OROSZ, MICHAEL BURZINSKI, ROBERT ZUBER, GARY THOMAS AND ADAM TIETCHEN, PLAINTIFFS–APPELLANTS, v. TOWNSHIP OF EDISON AND TOWNSHIP OF EDISON POLICE DEPARTMENT, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 12, 1997—Decided December 16, 1997.

Before Judges PRESSLER, CONLEY and CARCHMAN.

*Peter W. Till* argued the cause for appellants (*Wilf & Silverman*, attorneys; *Mr. Till*, of counsel and on the brief with *Jay A. Weissman*).

*Louis N. Rainone* argued the cause for respondents (*Karcher & Rainone*, attorneys; *Mr. Rainone*, of counsel and on the brief with *Kristin L. Baldwin*).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

Plaintiffs, seven patrolmen employed by the defendant, Township of Edison, appeal from a summary judgment dismissing their age-discrimination complaint in which they asserted that the Township's criteria for promotion to police sergeant disparately treated or disparately impacted upon patrolmen over the age of forty. Having carefully reviewed the motion record, we are persuaded that plaintiffs failed to establish a *prima facie* case of discrimination. In sum, the record demonstrates no support for plaintiffs' claim that they were victims of age discrimination by reason either of the written-test component or the college-credit component of the promotional criteria, or by both components in combination. Accordingly, we affirm.

Edison is not a civil service municipality. Prior to 1993, there was no merit-based promotion procedure for the Township's Police

Department. The undisputed allegation of the Township is that the promotional process was tainted by favoritism and Department politics. In order to cure this problem and to enhance the professionalism of the Police Department, the Township determined to institute a merit-based system akin to civil service requirements for its 1993 promotions to sergeant. The system's criteria, developed by Township officials in consultation with command officers of the Department and representatives of the P.B.A., included both a written and oral test, the written test accounting for forty percent of the candidate's score and the oral test for sixty percent. The total weighted score was then to be enhanced by the addition of credits for both seniority and education. Thus, one-half point was to be added to the weighted score for each year of service after the fifth year for up to a maximum of ten points, while two points were to be added for each level of college degree. That is, two points would be added for an associate's degree, four points would be added for a bachelor's degree and six points would be added for a post-graduate degree. Finally, admission to the promotional process was limited to candidates having at least five years of experience as a police officer. In implementation of this plan the Township contracted with a nationally-known police testing organization, McCann Associates, Inc., of Langhorne, Pennsylvania, to devise a written multiple choice examination to test the candidates' knowledge of police procedure and supervisory responsibilities. The examination tested seven specific areas of required knowledge and took into account the views of the Township and the Department command staff regarding the relative significance of each of the areas. The oral examination contemplated by the plan was to be conducted by a six-member board consisting of three neighboring police chiefs and three superior officers of Edison. The twenty-minute oral test/interviews were open to all candidates irrespective of their written test scores.

The Township's first notice to the Department of the promotional examination for sergeant was contained in a memo to patrol officers from the Deputy Police Chief dated February 2, 1993,

advising that the examination would be given at the beginning of June 1993. On March 9 the Director of Public Safety filed in the clerk's office a notice that McCann Associates would be preparing, administering and scoring the written examination. The notice also included a detailed statement of the promotional criteria and methodology, indicating that in addition to the test scores and the enhancement points, consideration would be given to recommendations by superior officers and a review of the candidates' personnel files. The procedure for the oral examination was also fully explicated. In addition, McCann Associates prepared study guides for the candidates, which included reading lists, sample written questions, and general test-taking and scoring information.

Eighty-one candidates sat for the written part of the sergeant's promotional exam on May 22, 1993. Each candidate was assigned an identification number to assure anonymity in scoring. All but two of the candidates went on to the oral exam, which was administered between June and September 1993. A ranked promotional list consisting of seventy-nine candidates was then prepared. The rankings were based on the total weighted written and oral test scores enhanced by seniority and education credits. The first eight ranked candidates were promoted to sergeant in September 1993. The next seven ranked candidates were promoted in November 1994. None of the seven plaintiffs was among the top eight ranked candidates. One, Allen Herman, was among the second group of seven and was accordingly promoted in November 1994.

The gravamen of the plaintiffs' age-discrimination claim is that a written examination and the awarding of enhancing points for college degrees discriminate against the older patrol officers in the Department because older officers are less likely to have obtained any college education than younger officers and, because they have less formal education, are not likely to do as well on written examinations as younger officers. Plaintiffs make this claim despite the fact that for many years the Township has had a program, under its collective negotiation agreement, of paying for

the education of those members of its Police Department who choose to pursue college credits and has implemented this program by adjusting the working hours of the participating officers to accommodate school attendance. Plaintiffs also make this claim despite the fact that older officers obviously obtain a greater benefit from the awarding of seniority credits than do younger officers. And they further make this claim despite the fact that nine of the total of fifteen promoted patrol officers had no college education at all. Plaintiffs apparently base this action primarily on the statistical fact that of the fifteen promoted officers, only three were forty or older, the ages of the others ranging from thirty-one to thirty-nine.

By way of procedural background, plaintiffs first raised their discrimination claims by an action in the Federal District Court of New Jersey in which they relied on the Equal Employment Opportunity Act (EEOA), 42 *U.S.C.A.* § 2000e to § 2000e–17, and the Age Discrimination in Employment Act (ADEA), 29 *U.S.C.A.* § 621 to § 634, as well as state law. On plaintiffs' motion, the federal court dismissed the federal claims with prejudice but dismissed the state claims without prejudice. This action then ensued in the Superior Court, Law Division, under the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –42, 10:5–12a. Some of the plaintiffs also alleged that acts of retaliation had been taken against them by the Township in response to their filing of the action. The Township moved for summary judgment in the summer of 1995, and at the oral argument, the judge reserved decision, indicating his need to further study the issues. The judge then requested additional materials, held further oral argument, and finally, in December 1996, issued a letter opinion explaining his reasons for granting the motion. A conforming order dismissing the complaint was entered in January 1997. There is no ready explanation for the untoward delay in the disposition of the motion.

In considering the plaintiffs' claim on appeal that they demonstrated a sufficient *prima facie* case of age discrimination to

withstand the summary judgment motion, *see, e.g., Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 666 *A.*2d 146 (1995), we are not certain, because it was not clearly articulated by plaintiffs, whether their theory is that the Township devised the promotional procedure in order to discriminate against them because of their age or whether, irrespective of intent, the nature of the promotional process had a discriminatory impact on them. Either theory, if proved, would, of course, be effective to support the discrimination claim. *See generally Giammario v. Trenton Bd. of Educ.,* 203 *N.J.Super.* 356, 361–363, 497 *A.*2d 199 (App.Div.), *certif. denied,* 102 *N.J.* 336, 508 *A.*2d 212 (1985), *cert. denied,* 475 *U.S.* 1141, 106 *S.Ct.* 1791, 90 *L. Ed.*2d 337 (1986). We, therefore, address both theories in the light of the record.

To begin with, the following are the undisputed facts respecting the performance of each of the plaintiffs in the promotional process:

Plaintiff Herman, then forty-seven years old and a fourteen-year member of the Department, placed tenth overall on the promotion list. His total weighted test score was twelfth. He tied for first place on the written portion and was seventieth on the oral portion. He received four-and-a-half enhancement points for seniority and no college points.

Plaintiff Joseph Esposito, then thirty-eight years old and a nine-year member of the Department, placed twenty-eighth overall. His total weighted test score was twenty-third. He placed thirty-fifth on the written portion and twenty-first on the oral portion. He received two seniority points and no college points.

Plaintiff Michael Burzinski, then forty-one years old and an eleven-year member of the Department, placed thirty-first overall. His total weighted test score was thirty-fourth. He placed thirtieth on the written portion and forty-fifth on the oral portion. He received three seniority points and no college points.

Plaintiff Robert Zuber, then forty-two years old and a twenty-two year member of the Department, placed forty-fifth overall.

His total weighted test score was sixty-eighth. He placed sixty-fourth on the written portion and fifty-sixth on the oral portion. He received eight-and-a-half seniority points and no college points.

Plaintiff Gary Thomas, then forty-one years old and a sixteen-year member of the Department, placed fiftieth overall. His total weighted test score was sixtieth. He placed fifty-ninth on the written portion and fifty-fifth on the oral portion. He received five-and-a-half seniority points and no college points.

Plaintiff David Orosz, then forty-two years old and a sixteen-year member of the Department, placed fifty-fourth overall. His total weighted test score was sixty-sixth. He placed sixty-ninth on the written portion and thirty-seventh on the oral portion. He received five-and-a-half seniority points and no college points.

Plaintiff Adam Tietchen, then forty-nine years old and a four-teen-year member of the Department, placed sixty-fourth overall. His total weighted test score was sixty-ninth. He placed eighty-first on the written portion and second on the oral portion. He received four-and-a-half seniority points and no college points.

Of the first-ranked eight candidates, who were all promoted to sergeant in September 1993, four, like plaintiffs, had no college credits. These four were thirty-six, thirty-seven, thirty-nine and forty years old and had, respectively, seven, thirteen, fifteen, and fifteen years of service to the Department. Of the second group of seven promoted to sergeant in November 1994, five, like plaintiffs, had no college credits. Of these five, two were thirty-one years old, one thirty-six, one forty-three, and one, plaintiff Herman, forty-seven. Their years of service were seven for both thirty-one year olds, fourteen for the thirty-six year old and Herman, and sixteen for the forty-three year old.

Analysis of the ranking tables also discloses the following facts. If points for neither college nor seniority were factored into the rankings, and they were therefore based only on the weighted test score, Herman would have ranked twelfth instead of tenth and would not have been eligible for promotion until the second group

of promotions, in which he was, in fact, included. The highest ranking that would have been achieved by any of the other six plaintiffs, if no enhancement points were counted, would have been Esposito's twenty-third place. If only points for seniority were factored in and no college points were counted, there would have been hardly any change in the rankings of the top fifteen candidates. That is, but for number eleven in the rankings, who would have fallen out of the top fifteen, the identity of the remaining fourteen in the top two groups would not have changed. The only other change would have been that Herman would have been eighth overall instead of tenth. The other six plaintiffs would have remained far out of the running.

In addition to the foregoing facts, the record includes reports from two experts retained by defendants and one retained by plaintiffs. Defendants' expert, William F. Howeth, Executive Vice President of McCann, who had worked closely with the Township and the Department in devising the test, conceded that the better educated officers had performed better on the written test than the less formally educated officers and that, in fact, the younger officers, who were better educated as a group, had performed better as a group. He asserted, however, that the written examination was both content-valid and job related, noting that in police forces around the country in which merit-promotion systems are used, a written promotional examination, either by itself or as a component of a broader testing procedure, is virtually universally employed. The job-relatedness of college education was attested to by defendants' second expert, Leo A. Culloo, President of the highly regarded Police Management Consultant Services, Inc. of Brick Township, who relied not only on his own experience but on the long-standing recognition by national and state commissions and task forces addressing police qualifications that higher education is a significant job qualification for police officers and, particularly, for supervisory personnel. Among the material cited by Culloo were the 1931 Wickersham Commission report; the 1967 *Task Force Report* of the President's Commission on Law Enforcement and Administration of Justice; the 1973 Report of

the National Advisory Commission on Criminal Justice entitled *Police*, and the 1977 report of the New Jersey Police Training Commission entitled *Standards for the New Jersey Municipal and County Policing System: A Plan of Action.*

Meanwhile, the report of plaintiffs' expert, Sheldon F. Greenberg, Ph.D., whose background, qualifications, and *curriculum vitae* are conspicuously omitted from the record, is largely conclusionary, a classic net opinion, and, to the extent it relies on facts, essentially misstates the undisputed facts in the record respecting the manner in which the entire promotional process was devised and implemented. *See Nesmith v. Walsh Trucking Co.*, 123 *N.J.* 547, 549, 589 *A.2d* 596 (1991). Notably, however, nothing in his report challenges either the asserted content-validity[1] of the written examination or the relevance of higher education as a promotional criterion for police officers. Indeed, the failure of the Greenberg report to adequately challenge the *prima facie* validity of the promotional process would have required dismissal of this action even in the absence of defendants' expert reports.

■ We consider plaintiffs' claims of disparate treatment and disparate impact in the light of the foregoing. The disparate treatment test articulated by the Supreme Court in *McDonnell Douglas v. Green*, 411 *U.S.* 792, 93 *S.Ct.* 1817, 36 *L.Ed.2d* 668 (1973), and its progeny, continues to inform our construction of the LAD. *See, e.g., Grigoletti v. Ortho Pharmaceutical Corp.*, 118 *N.J.* 89, 97–99, 570 *A.2d* 903 (1990); *Dixon v. Rutgers, The State University of N.J.*, 110 *N.J.* 432, 442, 541 *A.2d* 1046 (1988); *Maiorino v. Schering–Plough Corp.*, 302 *N.J.Super.* 323, 345–346,

---

[1] We note that the actual written test administered here is not part of the record. The study guide, which is, does however contain a number of sample questions arranged by area of police-procedure knowledge being tested. We have reviewed those questions, and it is sufficiently obvious to warrant the taking of judicial notice that those questions are clearly and simply stated and address matters as to which a police officer must be assumed to be knowledgeable. We further note the unchallenged representation of the study guide that all of the information covered by the actual test questions was included in the textbooks specified by the reading list provided prior to the exam.

695 *A.2d* 353 (App.Div.1997); *Giammario, supra,* 203 *N.J.Super.* at 361–362, 497 *A.2d* 199. Under the *McDonnell Douglas* test, a plaintiff presents a *prima facie* case of discrimination upon demonstration that he or she is a member of a protected class and qualified for the position sought but was denied the position while others of similar or lesser qualification achieved it. *Grigoletti, supra,* 118 *N.J.* at 98, 570 *A.2d* 903. We assume for present purposes that persons over age forty are, as in the case of the ADEA, a protected class. *See* 29 *U.S.C.A.* § 631. *See also Burke v. Township of Franklin,* 261 *N.J.Super.* 592, 602, 619 *A.2d* 643 (App.Div.1993). Six of the seven plaintiffs are within that class and sought promotion. The problem, however, is that they failed to show that they were qualified and that persons of similar or lesser qualification were promoted. Concluding that they failed to meet these components of the *McDonnell Douglas* disparate treatment test assumes, of course, that the score on the written examination and the achievement of college as well as of seniority points were valid criteria for promotion. But plaintiffs do not challenge the facial validity of those qualifications. What they really are challenging is the disparate effect of those qualifications. In sum, this is not a disparate treatment case at all. Plaintiffs were not disparately treated. As far as the record shows, they were treated exactly the same as all other candidates except for the fact that in the awarding of seniority credits, this protected class of officers was treated more favorably than the unprotected class.

■ We are also persuaded that there was an utter failure of proof on this motion that any disparate effect the promotional process may have had on the protected class constituted proscribed discrimination. We have no doubt that disparate impact meets the discriminatory proscriptions of the LAD. *See, e.g., Giammario, supra,* 203 *N.J.Super.* at 362–363, 497 *A.2d* 199. Nor do we doubt that the federal model informs this State's determination of whether a proscribed disparate impact has occurred. Thus, the EEOA enumerates the proof requirements for a finding

of proscribed disparate impact in employment discrimination cases as follows:

(k) Burden of proof in disparate impact cases

(1)(A) An unlawful employment practice based on disparate impact is established under this subchapter only if—

(i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race ... and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity; or

(ii) the complaining party makes the demonstration described in subparagraph (C) with respect to an alternative employment practice and the respondent refuses to adopt such alternative employment practice.

(B)(i) With respect to demonstrating that a particular employment practice causes a disparate impact as described in subparagraph (A)(i), the complaining party shall demonstrate that each particular challenged employment practice causes a disparate impact, except that if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice.

(ii) If the respondent demonstrates that a specific employment practice does not cause the disparate impact, the respondent shall not be required to demonstrate that such practice is required by business necessity.

(C) The demonstration referred to by subparagraph (A)(ii) shall be in accordance with the law as it existed on June 4, 1989, with respect to the concept of "alternative employment practice".

(2) A demonstration that an employment practice is required by business necessity may not be used as a defense against a claim of intentional discrimination under this subchapter.

[42 U.S.C.A. § 2000e–2(k)].

Applying this model to age rather than race discrimination, we think it plain that even if the burden had shifted to defendants to demonstrate that the written examination and college degrees were job-related and consistent with business necessity, defendants overwhelmingly bore that burden, particularly in view of plaintiffs' failure to offer any support for the contrary view. *See, e.g., Washington v. Davis,* 426 *U.S.* 229, 247, 96 *S.Ct.* 2040, 2051, 48 *L. Ed.*2d 597, 611–612 (1976). There simply was no basis in this record to support a finding that plaintiffs were intentionally discriminated against or that any disparate impact resulting from the written examination and the awarding of college credits was

not directly related to legitimate and altogether appropriate qualifications for promotion.

■ Finally, plaintiffs, as we have noted, assert that some of them were subject to Departmental discipline after suit was instituted which, they claim, was by way of proscribed reprisal. The trial judge did not address this claim, but the fact of the matter is that the affected officers do not deny their commission of the infractions that resulted in the discipline. Their claim is patently without *prima facie* merit.

The summary judgment dismissing the complaint is affirmed.