

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-30-2008

# Kanal Gaston v. State of NJ

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1831

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Kanal Gaston v. State of NJ" (2008). *2008 Decisions.* Paper 294.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/294

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1831
_____

KANAL V. GASTON,
Appellant

v.

STATE OF NEW JERSEY,
Department of Law and Public Safety,
Division of State Police

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 05-3006)
District Judge:  Honorable Freda L. Wolfson

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 20, 2008

Before:  RENDELL, FUENTES and NYGAARD, Circuit Judges

(Filed: October 30, 2008)
_____

OPINION OF THE COURT
_____

PER CURIAM

Kanal V. Gaston appeals from an order of the District Court granting summary

judgment on his federal employment discrimination claim against the State of New

Jersey, Department of Law and Public Safety, Division of State Police, dismissing his state law claims and denying leave to amend his complaint.

Gaston alleges that he applied to become a State Trooper with the New Jersey State Police in early 2001. He successfully completed an initial competitive exam, and proceeded to the initial Physical Qualification Test ("PQT") and interview. Gaston also submitted to an exhaustive background check. In December 2001, Trooper Lauther, a state police investigator, interviewed Gaston and completed the background investigation. On February 13, 2002, the New Jersey State Police Qualification Review Board voted unanimously that Gaston was qualified to become a State Trooper. In October 2002, Gaston reported for his second PQT, and defendant sent him a Supplemental Investigation Questionnaire ("SIQ"), allegedly because of the length of time that had passed since the first investigation. State Trooper Jafce Mandziuk interviewed Gaston about the information Gaston provided on the SIQ and initiated a new background investigation, allegedly because Lauther had not been able to contact Gaston's mother and sister in Haiti during the first investigation. Gaston explained that his sister and mother lacked telephones.

Gaston alleges that Mandziuk and his partner, Sergeant Smith, accused Gaston of lying and claimed that Lauther failed in the first investigation because he "did not know how to catch Haitians . . . who lie and cheat the system." At the close of the background investigation, Mandziuk urged the Executive Committee to disqualify Gaston from

consideration because of six perceived omissions and/or misrepresentations on the SIQ.[1] The State Police asked Gaston to submit a written explanation of these omissions and/or misrepresentations, and Gaston attempted to explain the discrepancies in July 2002. (Opp'n Mot. Summ. J., Ex. S16). At least one State Police official deemed Gaston's explanation regarding some of the omissions plausible. (Opp'n Mot. Summ. J., Ex. S13 (Gaston 178-179)).[2] In a memorandum dated November 21, 2002, Gaston stated that he would not be submitting any additional documentation because he had already submitted all the documentation he had, and he had already provided the names of all of his references. (Opp'n Mot. Summ. J., S17 (Gaston 77)).

The NJ State Police subsequently sent Gaston a letter, dated March 27, 2003, informing Gaston that he did not meet the Division standards for employment. When pressed for an explanation by Gaston, the State Police informed him that he had been rejected because of the sum total of "derogatory information" obtained about him. (Def.'s Mot. Summ. J., Goodman Decl., Ex. P). This included information in addition to the six omissions and/or misrepresentations identified by Mandziuk. Specifically,

---

[1] These included: (1) false statements to the Social Security Administration; (2) omission of having filed for divorce; (3) omission of school transcripts; (4) omission of physical altercation with his wife; (5) automobile insurance fraud; and (6) fraud in applying for a Florida driver's license. (Deft's Mot. Summ. J., Goodman Decl., Ex. S (summary of investigation)).

[2] Gaston labeled his submission a motion for summary judgment and for a preliminary injunction, rather than an opposition to defendant's motion; however, the District Court regarded Gaston's submission as an opposition brief, as it was filed in response to defendant's motion and was accompanied by evidence. We will do the same.

3

Gaston's own relatives accused him of having an inflated ego, and his former boss told the State Police that Gaston was not a "team player," and that she would not re-hire him. (Id., Ex. J). In light of pending changes to the selection process, however, the State Police invited Gaston to re-apply for the position *without* re-taking the initial competitive exam.

Gaston filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") on August 30, 2003. On February 11, 2005, the EEOC informed Gaston that the agency's investigation found no evidence of discrimination against him by the NJ State Police. On February 22, 2005, the EEOC issued Gaston a Right to Sue letter, and on June 10, 2005, Gaston filed the instant complaint against the State Police. Gaston did not name any individuals as defendants, but he alleged that Mandziuk and Smith discriminated against him on the basis of his national origin, and that the State Police's response to the EEOC amounted to libel and slander.

The District Court dismissed Gaston's state tort law claims under Fed. R. Civ. P. 12(b)(6), for failure to comply with the New Jersey Tort Claims Act; denied Gaston leave to amend his complaint to add claims and to name Mandziuk as a defendant, pursuant to Fed. R. Civ. P. 15(a), (c); and granted defendant's motion for summary judgment on his Title VII claim. The District Court determined that Gaston had failed to establish a prima facie case of employment discrimination because he had not established that he was qualified for the job; the Court also concluded that the defendant had legitimate, non-

4

discriminatory reasons to deny Gaston's application for employment, and that Gaston had failed to show that those reasons were pretext for discrimination. Gaston appealed.

We have jurisdiction under 28 U.S.C. § 1291. We review the grant of summary judgment de novo Startzell v. City of Phila., 533 F.3d 183, 192 (3d Cir. 2008). We will affirm the grant of summary judgment if, viewing the facts most favorably to the non-moving party, we determine that there are no genuine issues of material fact for trial. Id.

We determine that the District Court properly dismissed Gaston's state tort law claims against the State Police due to Gaston's failure to comply with the New Jersey Tort Claims Act ("TCA"), N.J.S.A. 59:8-1, et. seq. To maintain an action against a public entity or public employee, a plaintiff must file a notice of claim with either the State Attorney General or with "the department or agency involved in the alleged wrongful act or omission," N.J.S.A. 59:8-7, within 90 days of the accrual of the cause of action. N.J.S.A. 59:8-8. As Gaston has not averred that he filed a Notice of Tort Claim with respect to any of his state law claims, the District Court properly dismissed his state law claims.

The District Court also properly granted summary judgment to the State Police on Gaston's Title VII claim. A plaintiff asserting a "failure to hire" claim under Title VII and the NJLAD must establish a prima facie case of discrimination. Fuentes v. Perskie,

5

32 F.3d 759, 763 (3d Cir. 1994).[3]  This requires the plaintiff to establish that he belongs to a protected category; that he applied and was qualified for the job; that he was rejected, despite his qualifications; and that, after his rejection, the employer continued to seek applicants from persons with plaintiff's qualifications.  Id.  Once a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the employer to proffer evidence that it based the unfavorable employment action on a nondiscriminatory reason.  Id.  Once the employer meets this burden, the plaintiff has the burden of production to show by a preponderance that the employer's explanation was merely a pretext for discrimination.  Id.

The record reflects that Gaston initially met the basic qualifications to become a State Trooper, but that the SIQ revealed inconsistencies and/or omissions that doomed his application and rendered him "unqualified."[4]  Gaston attempted to explain each of the discrepancies identified by Mandziuk.  (Def.'s Mot. Summ. J., Mandziuk Decl., Ex. A (Gaston 141)).  Ultimately, he grew frustrated and informed the State Police that he had no additional documents or references to provide.  (Def.'s Mot. Summ. J., Goodman Decl., Ex. B).  The District Court concluded that Gaston had not demonstrated that any reasonable factfinder would find that he was qualified.

---

[3]As Gaston identifies no statutory authority for his claims, the District Court construed the complaint as stating claims under both Title VII and the NJLAD.  The analysis under both statutes is identical.  See Esposito v. Twp. of Edison, 703 A.2d 674, 679 (N.J. Super. Ct. App. Div. 1997) (analyzing NJLAD claim under McDonnell Douglas framework).

[4]The application form stated that any misstatement of fact would disqualify an applicant.  (Def.'s Mot. Summ. J., Goodman Decl., Ex. C (initial application)).

Under these circumstances, we agree that Gaston failed to demonstrate a prima facie case of discrimination, because he did not provide adequate explanations to the State Police for discrepancies in his application. We also conclude that the State Police possessed legitimate, non-discriminatory reasons for not hiring Gaston, aside from the six discrepancies in his application–namely that Gaston's references were poor. The record reveals that Gaston's own relatives considered him to have an inflated ego, and that a former boss indicated that she would not re-hire him. Gaston failed to offer evidence that would rebut this evidence. In his opposition to defendant's motion for summary judgment, Gaston dismisses the negative references as "defamatory" and "hearsay."[5] Gaston also asserts that Lauther spoke to his references without eliciting any derogatory remarks, but he offers no evidence in support of these contentions, such as an affidavit from Lauther, or an affidavit from any of the references mentioned in Mandziuk's report.[6]

Accordingly, we conclude that the record supports the grant of summary judgment to the defendant, and we will affirm the District Court's order.[7]

---

[5]Hearsay statements can be considered on summary judgment if they are "capable of admission at trial." Shelton v. Univ. of Med. & Dentistry of N.J., 223 F.3d 220, 223 n.2 (3d Cir. 2000).

[6]Gaston states that he has no burden to disprove the poor references identified by defendant, but he does: once a moving party produces evidence negating an essential element of the non-moving party's claim, the non-moving party must come forward with rebuttal evidence; he may not solely rely on his own allegations. Here, once defendant produced evidence of a non-discriminatory reason for not hiring Gaston, he had a burden to show that the reason was pretext for intentional discrimination. Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 364 (3d Cir. 2008).

[7]We do not agree with the District Court's rationale for denying Gaston leave to amend because we do not believe that Mandziuk would have been prejudiced had Gaston named

7

him in his amended complaint.  However, we believe that adding Mandziuk as a defendant would have been futile because Gaston failed to demonstrate a prima facie case of discrimination, and defendants had legitimate, non-discriminatory reasons for not hiring Gaston based on his references.  Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006).  Therefore, we will affirm the District Court's denial of leave to amend on that basis.