**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3803-22

LAURA C. WHEELER,

    Plaintiff-Appellant,

v.

NEW JERSEY STATE POLICE,
DSFC MICHAEL DAVIS,
LIEUTENANT ERIC BARLOW,
DSFC DANIEL STRASSHEIM,
and DSFC CRAIG BROWN,

    Defendants-Respondents.

_____

Submitted December 11, 2024 – Decided March 24, 2025

Before Judges Mayer and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1770-19.

Jacobs & Barbone, PA, attorneys for appellant (David A. Castaldi, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondents (Janet Greenberg Cohen, Assistant

Attorney General, of counsel; Eric Intriago, Deputy Attorney General, on the brief).

PER CURIAM

In this employment discrimination action, plaintiff Laura C. Wheeler appeals from the summary judgment dismissal of her amended complaint against New Jersey State Police (NJSP), and its employees, Lieutenant Eric Barlow, and Detectives Sergeant First Class Michael Davis, Daniel Strassheim, and Craig Brown (collectively, defendants). Plaintiff's amended complaint alleged gender and pregnancy discrimination in violation of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, and the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, commencing in 2011, before she gave birth to her first child.

On appeal, plaintiff claims the motion judge misapplied the summary judgment standard and erred as a matter of law. On de novo review, see Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 71 (2024), we reject plaintiff's contentions. We conclude, as did the motion judge, plaintiff failed to produce competent evidence supporting her claims and, as such, defendants must prevail as a matter of law. We therefore affirm.

A-3803-22

I.

We summarize the pertinent facts from the motion record in a light most favorable to plaintiff as the non-moving party. See R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Hired by NJSP as a trooper in August 2005, plaintiff held various positions in different units throughout her employment. Plaintiff was placed on administrative leave in August 2017, and other than a brief light-duty assignment in 2019, did not return to full-time work. As of the filing of the parties' appellate briefs, plaintiff remained on administrative leave earning her full salary.

Plaintiff gave birth to her first child in May 2011 and her second child in July 2013. At the time of plaintiff's pregnancies, NJSP's maternity leave policy followed the New Jersey Family Medical Leave Act (FMLA), N.J.S.A. 34:11B-1 to -16. Accordingly, regardless of gender, NJSP employees were therefore permitted up to twelve weeks paid leave for the birth of a child. As stated in the certification of NJSP's human resources unit head, under the FMLA, the employer's "[s]pecific dates for leave due to childbirth are determined by the employee's ob-gyn, and the standard prescribed leave is 4 weeks before birth, and 6 weeks to 8 weeks after birth, depending upon whether the birth is natural or caesarian." Thus, "[t]he start or end date of FMLA leave" was not determined

3

by the employer. During the FMLA period, employees were permitted to use paid sick time "subject to approval." After the FMLA period, employees were permitted to request regular sick leave "if warranted."

Regarding the birth of her first child, plaintiff used FMLA leave from April 11, 2011 to June 30, 2011. After exhausting FMLA leave, plaintiff used regular paid sick leave from July 1, 2011 through July 24, 2011. Thereafter, NJSP approved plaintiff's separate requests for fifteen unpaid furlough days between September 2011 and the end of that year, and sixteen unpaid furlough days between January 2012 and May 2012.

Concerning the birth of her second child, plaintiff used FMLA leave from June 14, 2013 through August 23, 2013. After exhausting FMLA leave, plaintiff used: "regular paid sick leave from August 24, 2013 through September 24, 2013, paid vacation from September 25, 2013 through October 14, 2013, and family leave without pay from October 15, 2013 through November 26, 2013." Thereafter, NJSP approved plaintiff's request for six of twenty-one days of unpaid furlough between December 2013 and June 2014. NJSP explained plaintiff's request was partially denied for "a number of reasons," including staffing and operational needs. NJSP approved plaintiff's ensuing requests for

A-3803-22

nine unpaid furlough days between March 2014 and June 2014 and fourteen unpaid days between September 2014 and the end of 2014.

From December 2013 to July 2014, plaintiff was assigned to the Official Corruptions Unit (OCU). Strassheim was the unit's assistant head. At deposition, plaintiff claimed in June 2014, Strassheim reprimanded her in a "very intimidating" voice, claiming she disobeyed "a direct order to serve a complaint." Plaintiff was later issued disciplinary charges, including willful disobedience for failing to serve the complaint.

During the same time frame, Barlow was OCU's lieutenant. When deposed, plaintiff stated from the outset of her OCU assignment, she "felt like [Barlow] never respected [her]." For example, plaintiff stated even though she was employed by the NJSP for about seven years when she was transferred to the OCU, Barlow "treated [her] like [she] was [just] out of the academy." Plaintiff also testified that Barlow remarked, "[y]ou need to dress nicer." According to plaintiff, Barlow "treated the men differently than [her]."

Plaintiff also asserted in September 2014, after she left the OCU and was assigned to the Evidence Management Unit, Barlow "berat[ed]" her at the Hughes Justice Complex by accusing her of being late for a court appearance and "stealing time" by overstating the hours allotted for that task. Plaintiff

5

claimed Barlow's internal report concerning the incident impeded her attempt "to apply for a sergeant spot." Plaintiff later was issued disciplinary charges stemming from the incident.

From March 2015 to September 2017, plaintiff was assigned to the Gangs and Organized Crime South Unit (Gangs Unit). During that time, Davis was the unit's assistant head. Although Davis was not plaintiff's direct supervisor, plaintiff testified Davis said "he was watching over [her]" and "she wasn't a team player." According to plaintiff, Davis "approach[ed] her in front of everyone," making it clear to "everyone in the [Gangs U]nit that he was disappointed with [her]."

From August 2016 to August 2017, Brown was assigned to the Gangs Unit as a sergeant first class. Plaintiff testified, at the end of August 2017, Brown "create[d] a hostile work environment for [her]." As one example, plaintiff testified Brown made an internal report stating "[plaintiff] said fuck you to him" when both she and Brown "would always bullshit on the phone" saying "fuck this, fuck that . . . this sucks." Plaintiff also testified about another occasion when Brown called her while she was at a doctor's appointment and accused her of failing to provide the requisite notice regarding her sick day. Plaintiff maintained she gave proper notice.

6

On August 28, 2017, plaintiff was placed on administrative leave for medical reasons. At that point, she had exhausted her paid FMLA leave and paid sick time. That same day, plaintiff filed a complaint with the Civil Service Commission's Division of Equal Employment and Affirmative Action (EEO complaint) against Davis.[1] In the EEO complaint, plaintiff claimed she was "discriminated, harassed, bullied, intimidated at work due to [her] gender as a female detective." Plaintiff sought "a hostile-free work environment." Sometime thereafter, plaintiff sought to return to duty.

On January 17, 2018, pursuant to NJSP policy, plaintiff underwent a fitness-for-duty examination. Following the examination, plaintiff was not cleared for duty; her service weapon was not returned. Certain treatment was required for her return to full duty.

Following a subsequent examination in May 2018, plaintiff was cleared for "non-safety sensitive/modified duty capacity." Later that year, her title was changed from Detective I to Trooper I. Defendants assert the redesignation was made pursuant to "NJSP's Standing Operating Procedure (SOP) C12," which states, "[d]etectives permanently reassigned to positions not performing

---

[1] Plaintiff's EEO complaint is dated August 28, 2017, but was received by the EEO officer on January 23, 2018.

investigative related functions will be re-designated troopers." New Jersey State Police, Standing Operating Procedure C12 § II(A)(4)(b) (rev. 2019). It is undisputed that "[t]he only difference in salary between NJSP employees with the designation Detective I and Trooper I is a $100 clothing allowance" for Detective I employees.

Nor do the parties dispute that in April 2018, "while working in a limited duty capacity," plaintiff "conduct[ed] an unauthorized school presentation, on behalf of NJSP." Plaintiff was issued disciplinary charges. In March 2020, plaintiff pled guilty to the charges stemming from this incident.

In the interim, on May 1, 2019, plaintiff filed her initial complaint against defendants. In the first three counts, plaintiff alleged violations of the LAD, asserting: Brown and Barlow "discriminat[ed] against her based on her pregnancy and gender" (count one); "Davis perpetrated a pattern and practice of harassment and retaliation against [her]" from August 17, 2017 "to date" (count two); and (3) defendants created a hostile work environment based on plaintiff's gender (count three). Plaintiff also asserted common law intentional inflection of emotional distress (IIED) (count four). In September 2020, plaintiff amended her complaint, adding CEPA violations: "adverse and retaliatory employment action" (count five); and "constructive discharge" (count six).

A-3803-22

At the close of discovery, defendants moved for summary judgment. Following supplemental briefing, the judge heard argument and reserved decision. On June 29, 2023, the judge issued a well-reasoned oral decision, spanning thirty transcript pages.[2]

In his decision, the motion judge squarely addressed the sufficiency of plaintiff's gender and pregnancy discrimination allegations in view of the controlling legal principles. Citing our decision in Cortez v. Gindhardt, 435 N.J. Super. 589, 606 (App. Div. 2014), the judge found plaintiff's "unsubstantiated inferences and bare conclusions" did not defeat summary judgment. The judge conducted a thorough review of the record addressing seriatim each count asserted in plaintiff's complaint.

As to count one, the judge was persuaded plaintiff's allegations against Barlow were time-barred under the two-year statute of limitations for LAD claims pursuant to N.J.S.A. 2A:14-2(a) and Alexander v. Seton Hall University, 204 N.J. 219 (2010). Noting plaintiff had no contact with Barlow after October 2014, the judge found the claims against Barlow expired in October 2016, and were time-barred because plaintiff did not file her initial complaint until May 1,

---

[2] Plaintiff did not provide the transcript of oral argument. We glean the arguments raised by the parties from the judge's decision.

2019. The judge also rejected plaintiff's argument that the continuing violation doctrine applied because she failed to analyze how an LAD claim was viable against Barlow. Instead, plaintiff "admit[ted in] her responsive statement of material facts that after October of 2014, her only interactions with Barlow were occasionally seeing him at [NJSP] functions."

Recognizing plaintiff's claims against Brown were timely, the judge cited the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973), as adopted by New Jersey courts. See e.g., Viscik v. Fowler Equip. Co., 173 N.J. 1, 13-14 (2002). But the judge found plaintiff failed to sustain her burden of establishing a prima facie LAD claim based on pregnancy or gender because "the record contain[ed] no evidence that [her] gender or pregnancy played a role in any encounter" with Brown. The judge found "[p]laintiff fail[ed] to state how any material fact in relation to her encounters with Brown [wa]s in dispute" and only cited "her deposition testimony" in lieu of competent evidence, such as "any other affidavit, . . . document, or testimony." The judge concluded the record was devoid of any evidence that "[plaintiff]'s misconduct occurred for any reason other than her own actions with respect to any of the specific incidents involving Brown."

A-3803-22

Turning to the second count, the judge found plaintiff's LAD claims were barred under CEPA's waiver provision, N.J.S.A. 34:19-8 (providing, in pertinent part, an action filed under CEPA is "deemed a waiver of the rights and remedies available" pursuant to any state statute or the common law); see also Young v. Schering Corp., 141 N.J. 16, 29 (1995).

Regarding count three, which alleged a hostile work environment against all defendants, the judge again found plaintiff's claims against Barlow were time-barred and the continuing violation doctrine was inapplicable. Similarly, the judge found any allegations regarding Strassheim's conduct were time-barred because "[plaintiff] admitted that after July 2014, she was never assigned to the same unit as Strassheim and had no further interactions with him." The judge nonetheless addressed the merits of plaintiff's allegations against Strassheim and concluded "the record is clear that [plaintiff]'s work performance deficiencies were the sole cause of the numerous formal charges she received from Strassheim and Barlow" as plaintiff proffered "no evidence which even suggest[ed] that her gender or pregnancy played a role in Strassheim's decision to issue her any disciplinary charges."

The judge also rejected plaintiff's allegations against Davis, finding none of the incidents plaintiff cited "[was] sufficiently severe or pervasive to create a

hostile work environment." Regarding plaintiff's claims against Davis, the judge referenced plaintiff's EEO allegations were not substantiated by the Attorney General's EEO office, which "found no evidence that [her] gender played any role in Davis's conduct during the call."

Citing our decision in Turner v. Wong, 363 N.J. Super. 186, 199 (App. Div. 2003), the motion judge dismissed plaintiff's IIED claims asserted in count four. The judge recognized plaintiff sought professional treatment around the time of the August 2017 incident with Davis, but found plaintiff "failed to plead any details or present any competent evidence" and her allegations did not meet the elevated threshold for IIED claims pursuant to our decision in Ingraham v. Ortho-McNeil Pharmaceutical, 422 N.J. Super. 12, 21 (App. Div. 2011) (recognizing the threshold "is satisfied only in extreme cases"). See also Griffin v. Tops Appliance City, Inc., 337 N.J. Super. 15, 23 (App. Div. 2001).

Finally, the motion judge found plaintiff failed to establish a CEPA claim, because she failed to satisfy the existence of an adverse employment action under the third prong of Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003). In particular, the judge found plaintiff filed her EEO complaint against Davis in August 2017, and her designation from Detective I to Trooper I did not change until December 2018 – more than one year after she submitted her August 2017

12

EEO complaint. Citing, at length, the undisputed facts, the judge concluded "[plaintiff's] job duties only changed because of recommendations that resulted from her fitness-for-duty exams that she was required to undergo pursuant to state policy." This appeal followed.

Before us, plaintiff argues the motion judge erred in granting summary judgment by "inexplicably" determining her "sworn testimony was not competent evidence." Plaintiff also argues the judge erroneously concluded she failed to demonstrate an adverse employment action under CEPA. Lastly, plaintiff contends the judge failed to properly analyze her hostile work environment LAD claim by misapplying the continuing violation doctrine.

We review de novo the motion court's decision on summary judgment. Conforti v. Cnty. of Ocean, 255 N.J. 142, 162 (2023). Employing the same standard as the motion court, we review the record to determine whether there are material factual disputes and, if not, whether the undisputed facts viewed in the light most favorable to plaintiff, as the non-moving party, nonetheless entitle defendants to judgment as a matter of law. See Samolyk v. Berthe, 251 N.J. 73, 78 (2022); Brill, 142 N.J. at 540; see also R. 4:46-2(c). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion." Puder v. Buechel, 183 N.J. 428, 440-41 (2005). We owe no deference to the

court's legal analysis or interpretation of a statute. Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017).

We have considered plaintiff's contentions in view of the applicable law and the motion record, and conclude they lack sufficient merit to warrant extended discussion in our written opinion, R. 2:11-3(e)(1)(E). We affirm substantially for the reasons expressed by the motion judge in his well-reasoned oral decision. We add only the following remarks.

"The statute of limitations for LAD claims is two years." Roa v. Roa, 200 N.J. 555, 566 (2010). "For causes of action arising under anti-discrimination laws, however, a judicially created doctrine known as the continuing violation theory has developed as an equitable exception to the statute of limitations." Ibid. (quoting Bolinger v. Bell Atl., 330 N.J. Super. 300, 306 (App. Div. 2000)). Under that doctrine, when a plaintiff demonstrates a "continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases." Wilson v. Wal-Mart Stores, 158 N.J. 263, 272 (1999).

To establish a prima facie CEPA claim, the employee must prove

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;

(2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c);

(3) an adverse employment action was taken against him or her; and

(4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

[Dzwonar, 177 N.J. at 462.]

CEPA defines actionable retaliation as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e). Neither an investigation of an employee nor substantiated disciplinary charges are considered retaliatory. See Beasley v. Passaic Cnty., 377 N.J. Super. 585, 606 (App. Div. 2005). "Where the affected party does not deny committing an infraction that resulted in discipline, the discipline cannot be considered 'proscribed reprisal.'" Id. at 607 (quoting Esposito v. Twp. of Edison, 306 N.J. Super. 280, 291 (App. Div. 1997)).

We reject plaintiff's argument that the judge erred in granting summary judgment as a matter of law. Having conducted a de novo review of the record, there is no competent evidence to support plaintiff's claims, which are based

15

primarily on her self-serving deposition testimony.  See Puder, 183 N.J. at 440-41.  Accordingly, plaintiff's LAD and CEPA claims are not viable.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-3803-22